[Filed November 17, 1891.]

## GUSTAF ANDERSON *v.* NORTH PACIFIC LUMBER CO.

PLEADING—WAIVER OF DEFECT BY ANSWER.—A defendant waives his objection to any ruling of the court with reference to the form of the pleading by answering and going to trial.

NEGLIGENCE—JURY—QUESTION OF FACT.—As a general rule, the question of negligence is a question of fact and not of law. When the care exercised by the plaintiff at the time of the injury and the negligence of the defendant are of a complex character, depending upon particular circumstances of fact which require to be compared and weighed to determine the fact of negligence, the case is for the jury, whose province it is to find the facts.

EVIDENCE—QUESTION OF FACT—NONSUIT.—Where the right determination of the cause depends upon the effect or weight to be given to the evidence, it is for the consideration of the jury under proper instruction from the court as to the law; and a cause should not be taken from the jury, unless the evidence at the trial and all reasonable inferences of which it is susceptible are insufficient to support a verdict for the plaintiff.

INSTRUCTIONS—DUTY OF COURT—ERROR.—It is the duty of the court to instruct the jury upon every point relevant to the issue, and either party has the right to have the jury so instructed, plainly and pointedly, so as to avoid liability to mistake or error; and if the court should fail so to instruct, it would be error to refuse instructions calculated to cure the omission.

CUMULATIVE INSTRUCTIONS—REFUSAL NOT ERROR.—Where the instructions of the court were a concise and accurate statement of the law applicable to the facts, and covered every point pertinent to the issue involved in the instructions asked, it was not error to refuse them.

Multnomah county: E. D. SHATTUCK, Judge.

Defendant appeals. Affirmed.

*M. C. George*, for Appellant.

*Williams & Wood*, for Respondent.

LORD, J.—This is an action to recover damages for injuries sustained by the plaintiff in the sawmill of the defendant. In substance, his complaint is that he was at work for the defendant in its sawmill, and was directed by the foreman to work about certain "live rollers" in the mill; that while he was so at work, in the night-time, in consequence of the negligence of the defendant in not providing the necessary and usual light, and in consequence of certain teeth upon the rollers, which were wholly unnecessary and useless, and without any fault on his part, his foot was caught in these rollers and a large part of it was torn off, whereby he was damaged, etc. A trial was had which resulted in a verdict and judgment for the plaintiff, hence this appeal.

The first error assigned is that the court below erred in overruling the defendant's motion to make the complaint more definite and certain in stating whether it was by reason of the defect alleged that the injury occurred. To this the answer is that the court did not overrule the motion, but allowed it, and the complaint was amended. The language to which the objection was made, as it originally appeared in the complaint, was this: "Plaintiff further alleges that the said roller by which plaintiff was caught as aforesaid was defective, unsafe and dangerous, which fact was well known to the defendant; and that the defendant had neglected and refused to put them in a proper condition, by means of which carelessness and negligence on the part of the defendant as to said light and said rollers, the plaintiff was injured as aforesaid." This allegation was amended by striking out the word defective, and inserting after the word dangerous the words "in having upon them teeth or spikes which were wholly useless and unnecessary," thus obviating the objection, and giving a clear and precise statement of the manner in which the plaintiff was injured, and the reason why the defendant is responsible for that injury. Besides by answering and going to trial, the defendant waived its objections to any ruling of the court with reference to the form of the pleading. By doing this, the

defendant admitted that the defect complained of was cured by the amendment, and that it needed no further information by making the complaint more definite than already made by such amendment, and that it accepted the amended complaint as it stood, and was prepared to meet it, provided of course it stated a cause of action.

The next error alleged is the refusal of the court to allow a nonsuit after the plaintiff had rested. This is the main contention for the defendant, and upon which its counsel presented an earnest and able argument. It is not possible to set out *in extenso* the testimony, but enough of it may be stated to determine whether there is any evidence upon which the jury could find a verdict for the plaintiff. There can be no doubt, if there be not sufficient evidence, it was the duty of the court to grant a nonsuit, as it would be an idle proceeding to submit evidence to the jury when they could justly find but one way only. On the other hand, if there be in the judgment of the court any legal evidence tending to prove the issue, it must go to the jury for them to determine what weight shall be attached to it.

The testimony for the plaintiff is directed to proving the two allegations upon which his complaint is grounded as the cause of his injury. The testimony for the plaintiff tends to show that he was taken from the place where he was employed in a comparatively safe occupation in the sawmill of the defendant and ordered to work on the trimmers, which was a much more dangerous occupation and one in which he was inexperienced; that he objected to the change on account of the danger, but that the foreman insisted he should do as he was ordered, and work at the trimmers until another man could be procured for the place; that a part of the work which devolved upon him, after the lumber was trimmed and sent down to be carried off by the rollers, was to take a handspike when a blockade or jam occurred, as sometimes happened, and press against the load so as to push it along and down the chute; that the rollers were lifted up from their ordi-

nary level or position by a lever when it was necessary to
use them for sending the load of lumber along, and that
on the night the accident occurred there was a blockade
and the lumber would not go forward, so that it became
necessary to use the handspikes to shove the load along; that
the light over the roller where the injury occurred was an
electric light, which was extinguished or would not give
light, and had been in that condition about a week, and
rendered the place rather dark and difficult to see where
the roller was located; that there was a good light at one
end, rendering the first live-roller visible, but at the other
end, where the plaintiff was required to go to remove the
jam, the last live-roller could not be seen plainly because
the light was out; that this condition of things was known
to the defendant when the plaintiff was ordered to work at
the trimmers; that he objected to the danger liable to hap-
pen from these rollers, and to obviate this objection and
allay his fears, the foreman promised to have the spikes
removed from the rollers, or other rollers less dangerous
substituted, which, as the subsequent testimony shows, better
answered the purpose of moving the lumber, but this pro-
mise was not fulfilled; that on the night when the plaintiff
was injured and the jam occurred, it became necessary for
him to assist in prying the lumber which had become
blocked; this light was still out, and the rollers to which he
had objected, continued to be used, rendering it difficult to
see the last roller; that in going to the place where the
lumber was blocked, which was over the third or last live-
roller, he walked over two of them, and began to assist in
prying the load, and while so engaged his foot was caught in
it and nearly torn off. In answer to several inquiries, he
says he looked out all right to see where the live-roller was,
and that he was thinking about what he was doing while
engaged in prying the load, but that he don't remember
that he was thinking of the roller when he got hurt. This
is mentioned because some stress was put upon it as indi-

cating a want of due care on his part, or contributory negligence.

As illustrating the character of the testimony in respect to a want of light to render the roller visible and easily to be located where the injury occurred, one of the witnesses for the plaintiff, not disposed to magnify any of the circumstances, when asked whether there was "light enough to see the rollers along there," answered: "Well, it was a little dark out there." And again, that "it was difficult to see out there on account of the absence of that light"; that "it was a little dark—more dark," etc. There is no doubt that the roller could be seen, but that it was difficult, and not visibly exposed like the others where there were electric lights, and as it would have been, and as was contemplated that it should, by the location of the light over it, if that light had not been out and permitted to remain so. It was argued, because it could be seen by special effort, although somewhat dimly, and because the plaintiff testified that he was able to see the load of lumber by aid of the other lights, that he must have been able to see it; that the danger was fully exposed, taken in connection with the knowledge of its location, and that if he had been exercising due care under the circumstances, and looking to see where the live-roller was, he would not have been injured. But his testimony shows that after he passed two of the live-rollers, he did look out to see where this last roller was by which he was injured, and over which the light was out, and that it was after he had begun work and when his mind was engaged, "thinking about what he was doing," that the injury occurred.

The evidence of both witnesses, who were at work there at the time, tends to show that it was difficult to break the jam, and that it was while they were prying and working about it and devising some way to start the lumber, without the usual light, rendering the precise location of the roller obscure and difficult to be seen, that his foot was caught and mangled in the roller. The inference to be drawn

from circumstances of this character is peculiarly appropriate for the consideration of the jury, especially in view of the nature of the rollers and the evidence in regard to their uselessness.

As a general rule, the question of negligence is a question of fact and not of law. The care exercised by the plaintiff at the time of the injury and the negligence of the defendant present a complicated question, depending upon particular circumstances of fact to be weighed and determined by the jury.

"The question as to the existence of negligence, or a want of ordinary care," said STORRS, J., "is one of complex character. The inquiry not only as to its existence but whether it contributed with negligence on the part of another, to produce a particular effect, is much more complicated. As to both, they present from their very nature a question not of law but of fact, depending upon the peculiar circumstances of each case, which circumstances are only evidential of the principal fact, that of negligence or its effects, and are to be compared and weighed by the jury, the tribunal whose province it is to find the facts, not by any artificial rules but by the ordinary principles of reasoning; and such principal fact must be found by them before the court can take cognizance of it and pronounce upon its legal effect." (*Park* v. *O'Brien*, 23 Conn. 347.)

In *Ireland* v. *R. R. Co.* 13 N. Y. 533, JOHNSON, J., speaking upon this subject, says: "The fact of negligence is very seldom established by such direct and positive evidence that it can be taken from the consideration of the jury and pronounced upon as a matter of law. On the contrary, it is almost always to be deduced as an inference of fact from several facts and circumstances disclosed by the testimony after their connection and relation to the matter in issue have been traced and their force and weight considered. In such cases the inference cannot be made without the intervention of a jury, although all the witnesses agree in their statements, or there be but one statement which is

consistent throughout. Presumptions of fact, from their very nature, are not strictly objects of legal science, like presumptions of law. That the care exercised by the plaintiff at the time of the injury, and the negligence of the defendant, were both questions for the jury to determine, cannot admit of any doubt."

When we consider the duty the plaintiff was required to perform when the jam occurred, its proximity to the roller, the absence of the usual and necessary light to expose and locate the place of danger and render the chute reasonably safe for the performance of his work, the apparent uselessness of the spikes, the failure to remove them and the increased danger in consequence thereof, and how he performed his duty under all the circumstances as disclosed by the evidence in connection with the conduct of the defendant in the premises, there is presented an array of facts of a complicated character which require to be compared and weighed in order to determine the fact of negligence, which is exclusively for the jury, whose province it is to find the facts. In such case the inference to be drawn from the facts are not certain and indisputable, and cannot be declared by the court as a matter of law, but the facts are of that sort about which reasonable men might draw different conclusions, and which require to be submitted to the jury to be analyzed and weighed by them in order to determine the question of negligence as a matter of fact.

The principle has often been declared that where the right determination of the cause depends upon the effect or weight to be given to the evidence, it is for the consideration of the jury under proper instructions from the court as to the law, and that a case should not be taken from the jury unless the evidence at the trial, and all reasonable inferences of which it is susceptible are insufficient to support a verdict for the plaintiff. (*Phœnix Ins. Co.* v. *Doster,* 106 U. S. 30; *Randall* v. *R. R. Co.* 109 U. S. 478.) In view of these considerations we think there was no error in refusing the nonsuit.

The next assignment of error is that the court refused to give the instructions numbered from one to eighteen. These instructions are plainly not designed to cure any omission of the trial court to instruct the jury upon every point applicable to the facts and pertinent to the issue, but they seemed to be framed as an independent statement, with reference to the alleged negligence in every conceivable form suggested by the books, with two or three exceptions, which involve principles of law inapplicable to the case. Without doubt it is the duty of the court to instruct the jury upon every point relevant to the issue; and either party has the right to have the jury so instructed, plainly and pointedly, so as to avoid liability to mistake or error. Nor can it be denied that if the court should fail so to instruct, it would be error to refuse instructions calculated to cure the omission. But it was never contemplated that the court should be required to give a multitude of instructions the effect of which is quite apt to confuse or mislead the mind of the jury, and a practice which has met the decided condemnation of this court. (*Knahtla* v. *O. S. L. etc. Ry. Co. ante,* 136; *Weeklund* v. *S. O. Co.* 20 Or. 591.)

As the record contains all the evidence and the charge of the court in full, it is our opinion, after a careful examination of it, that the instructions of the court were a concise and accurate statement of the law applicable to the facts, and especially as guarding the rights of the defendant, and covered every point pertinent to the issue involved in the instructions asked. If there was any error it was not of law in the trial court, and beyond that it is not our province to inquire.

The judgment of the trial court must be affirmed.