Argued September 9, decided September 23, rehearing denied December 2, 1913.

## WOODS *v.* WIKSTROM.*

(135 Pac. 192.)

**Trial—Right to Nonsuit.**

1. Under Section 183, L. O. L., providing that a cause not sufficient to be submitted to the jury is one where it appears that, if the jury were to find a verdict for plaintiff upon any or all the issues to be tried, the court ought to set it aside, a nonsuit cannot be granted unless there is no evidence to support the verdict; Article VIII, Section 3, of the Constitution, as amended (see Laws 1911, p. 7), providing that no fact tried by the jury can be re-examined in any court unless the court can affirmatively say there was no evidence to support the verdict.

---

*For a collection of the authorities on the right in action at law to attack release for fraud, see note in 20 L. R. A. (N. S.) 915.

As to the return or tender of consideration from release of claim for personal injuries set aside on ground of fraud, see note in 35 L. R. A. (N. S,) 660.    REPORTER.

**Trial—"Motion for Nonsuit."**

2. A "motion for nonsuit" is in the nature of a demurrer to the evidence, admitting not only what the evidence for the plaintiff proves, but all that it tends to prove, so that the only question for the court is whether there was any material evidence tending to prove the allegations of the complaint.

**Trial—Motion for Nonsuit—Evidence for Defendant.**

3. On motion for nonsuit, none of the evidence for defendant can be considered.

**Master and Servant—Injuries to Servant—Safe Place to Work.**

4. A master owes his servants the duty of exercising reasonable care to provide them with a reasonably safe place in which to work and machinery and appliances with which to work.

[As to the duty of an employer to furnish safe place and appliances, see notes in 97 Am. St. Rep. 884; 98 Am. St. Rep. 289.]

**Master and Servant—Injuries to Servant—Actions—Jury Question.**

5. In a personal injury action by a servant, evidence *held* to support a verdict for the servant under the rule that, where the proof of the accident is accompanied by proof of facts and circumstances from which an inference of negligence may be drawn, the cause must be submitted to the jury.

**Master and Servant—Injury to Servant—Proximate Cause of Injury.**

6. Where a master, engaged in logging, fastened a block, which carried the trip-line, upon a branch of a maple tree which was rotten and broke under the strain, injuring plaintiff, a servant, the master's negligence cannot be held, as a matter of law, not to have been the proximate cause of the injury because the break resulted from the catching of the cable in a forked log or chunk.

**Release—Vacation—Release Under Seal.**

7. A release under seal may, in an action at law, be avoided by alleging and proving that its execution was obtained by fraud of the releasee.

**Release—Vacation—Evidence—Sufficiency.**

8. In a personal injury action by a servant, where the defendant set up a release, evidence *held* sufficient to support the verdict that the release was obtained through the master's fraud.

**Release—Avoidance—Evidence.**

9. Where a servant, who suffered severe personal injuries for which he was awarded a verdict of $5,000, was induced by the master to sign a release for $30 and employment, the inadequacy of the consideration, which in reality amounted to only $30, will be considered on the question of the master's fraud.

**Release—Validity—Fraud.**

10. Where a master, to obtain a release, willfully misrepresented to the injured servant that the accident was unavoidable, and that the servant had no redress, he is guilty of fraud which will invalidate the release.

Release—Vacation—Tender of Money Received.

11. An injured servant, who signed a release for a very small amount, need not tender a return of the consideration upon attempting, in an action for injuries, to set aside the release for fraud, it being apparent from the master's reliance on the release that he would not have accepted the tender.

[As to necessity of returning consideration upon repudiation of release of damages for personal injuries procured by fraud, see note in Ann. Cas. 1912D, 1084.]

From Columbia: JAMES A. EAKIN, Judge.

Department 1.    Statement by MR. JUSTICE RAMSEY.

This is an action by Harry Woods against I. G. Wikstrom to recover the sum of $10,000 as damages for personal injuries. The plaintiff recovered a verdict and a judgment for $5,000. The defendant appeals and assigns various alleged errors. The chief alleged error relied on by appellant was the refusal of the court below to grant a nonsuit on the ground of insufficiency of the evidence to be submitted to the jury. Many other alleged errors were assigned, but most of them were not argued.                         AFFIRMED.

For appellant there was a brief over the names of *Mr. Edward B. Watson* and *Messrs. Joseph & Haney,* with an oral argument by *Mr. Watson.*

For respondent there was a brief over the name of *Messrs. Emmons & Webster,* with an oral argument by *Mr. Lionel R. Webster.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

The defendant was engaged in the manufacture of lumber in Columbia County, in May and June, 1910, and prior and subsequent thereto. The defendant used a donkey-engine and the appliances that go with it in hauling logs for his mill. The plaintiff was employed by the defendant to work for him in his sawmill

business in the latter part of May and the fore part of June, 1910. He worked at different kinds of work about the mill and in the woods. He was badly injured on June 3, 1913, while engaged in such employment, and this action was brought to recover damages for such injury on the ground of alleged negligence of the defendant.

The plaintiff claims: That about June 7, 1910 (it was June 3d), while he was in the employ of the defendant as "chaser," it became his duty to follow logs that were being hauled by means of a donkey-engine, blocks, chains, cables and other contrivances along a certain trail called the "poll road," and that after a certain chain, called the "butt chain," had been unhitched from said sawlogs, it became his further duty to follow said butt chain back a certain distance over the trail first above mentioned, and that the plaintiff did follow the said butt chain as became his said duty. That in following the said butt chain as above alleged, it was necessary for the plaintiff to pass within a few feet of a certain maple tree, to a branch of which was attached a block or pulley through which ran a certain cable called the "trip-line," said trip-line being a cable about five eighths of an inch in diameter, and it was attached to a drum, caused to revolve by said donkey-engine, placed at the foot of said trail, for the purpose of letting said trip-line out, or pulling it in as the work required, and from said drum the trip-line ran away out several hundred feet into the woods, passing through a number of blocks attached to stumps and trees as anchors at various places, of which the said maple tree was one, until the said trip-line reached the head of the trail upon which this plaintiff worked as heretofore alleged, when it passed through a certain block and then followed the trail back to the donkey-engine, where it was attached to the end of a large cable called the "main line," which was used to haul

logs along the trail, and was wound or unwound upon another drum, caused to revolve by the donkey-engine. That said main line was one to which was attached the butt chain followed by this plaintiff as heretofore alleged. That said trip-line was for the purpose of drawing said main line and butt chain out to the woods after being unfastened from the logs. That it was the defendant's duty to furnish this plaintiff a safe and secure place to work, to provide machinery that was safe and suitable, and have all blocks and pulleys fastened to anchors that were strong, safe, and secure, so as not to unnecessarily expose his employees, and especially this plaintiff, to the danger of personal injuries. That the defendants, on the contrary, disregarded their said duty, and carelessly and negligently ordered and permitted machinery, cables and blocks to be used that were not strong, safe or suitable, and ordered and permitted the donkey-engine, cables, blocks and other contrivances heretofore mentioned to be placed and arranged in such a manner that they were dangerous and insecure in this: That said defendants ordered and permitted that certain donkey-engine to be placed in such a manner that the cables and blocks were not attached to trees, stumps or any other kind of anchors that were safe and strong, capable of sustaining the strain to which they were subjected; that said defendants ordered and permitted the trip-line herein mentioned to be strung over a certain route that was improper and unsafe for the reasons that the anchors were weak, unsound and dangerous, and that it was hung in such a manner as to subject the anchors to unnecessary stress and strain, and said defendants ordered and permitted a certain block through which the said trip-line passed to be attached to the branch of the maple tree before mentioned, and that said tree and the said branch thereof was small, rotten and hollow and in many other ways

was not a fit or proper place to which to attach the said block; that said defendants ordered and permitted said block to be fastened to the said maple tree in a manner that was unsafe and insecure and subjected said tree and branch thereof to more strain than was necessary, of which the plaintiff had no notice or knowledge, but which was or ought to have been known by said defendants. That while this plaintiff was following the said butt chain, as heretofore alleged, the said branch of said maple tree, because of the negligence and carelessness of said defendants as heretofore set out, broke, and, by reasons thereof, the said branch, line and block swept across the log road and down upon the plaintiff, and struck him with great force and violence, and thereby, and in consequence thereof, he was rendered unconscious for many days, his legs were broken and bruised, his head and face cut and bruised, his body maimed, mangled and partly paralyzed, and he suffered and sustained great internal injuries, and was thereby rendered a cripple for life, unable to pursue his usual or any other vocation, to his damage in the sum of $10,000, etc.

The defendants denied the material allegations of the complaint, and pleaded, in mitigation of damages, that the plaintiff, after said accident, became intoxicated and fell, and thereby aggravated his said injuries. The defendants, also, pleaded that the plaintiff should have followed and kept within reach of the signal wire in order to give signals by the use of said wire to the engineer operating said donkey-engine and thereby control the movements of said engine, etc. They allege, also, that if he had followed said signal wire, he would not have been struck by said maple tree or injured at all and claim that his injury was the result of his own negligence.

They allege, also, that the plaintiff, in consideration of $30, paid him by one of the defendants and for other

valuable considerations, released his claim against the defendant I. G. Wikstrom for damages for said injury. The defendants allege, also, that the breaking of said maple branch was caused by said butt chain's catching in the forks of a log lying near said logging road. They allege that this caused an extra strain on said maple branch and caused it to break, without any fault of the defendants.

Most of the affirmative matter in the answer of the defendant I. G. Wikstrom was denied by the reply, and the reply alleges that said release of the plaintiff's claim for damages was obtained by fraud, etc. The reply denies, also, that said signaling wire was in use, and claims that it could not have been used for signaling.

The evidence showed that Frank Wikstrom, who was made a defendant, was not a partner in said mill business, and the action, as to him, was abandoned.

The substance of the defense of the defendant I. G. Wikstrom is that he was not guilty of negligence, that the injury to plaintiff was the result of his own negligence, that the proximate cause of the injury was the catching of said forked log in the cable, and the release of the right of action by the plaintiff.

1. The first point for consideration is whether the trial court erred in overruling the defendant's motion for a nonsuit.

The jury found a verdict for the plaintiff, and we are asked to set it and the judgment based on it aside for want of sufficient evidence to support them.

Article VII, Section 3 of the Constitution, *inter alia,* provides: "In actions at law when the value in controversy shall exceed $20, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless *the court can affirmatively say there was no evidence to support the verdict*": See Laws 1911, p. 7.

This provision of the Constitution has been construed in several cases by this court: *Forrest* v. *Portland Ry., L. & P. Co.,* 64 Or. 240 (129 Pac. 1050); *State* v. *Rader,* 62 Or. 37 (124 Pac. 195); *Sullivan* v. *Wakefield,* 65 Or. 528 (133 Pac. 641). This section of the Constitution changed the law in relation to re-examination of facts passed upon by juries, and narrowed the powers of all courts in this respect. When the amount in controversy exceeds $20, and the facts have been passed upon by a jury, and the verdict has not been vitiated by errors of law committed by the court in rulings on the admissions of evidence or in charging the jury, no court can legally set aside the verdict or the judgment based upon it, unless the court can affirmatively say that *there was no evidence to support it*. If there was the evidence of only one witness testifying to facts that supported a verdict, and any number of witnesses testifying to a contrary state of facts, under this provision of our Constitution, a verdict, based on the evidence of the one witness, could not be properly set aside by any court. Section 183, L. O. L., provides that a cause not sufficient to be submitted to a jury is one where it appears that if the jury were to find a verdict for the plaintiff, upon any or all of the issues to be tried, the court ought, if required, to set it aside for want of evidence to support it. Hence a motion for a nonsuit cannot be properly allowed, unless the court can say affirmatively that there is *no* evidence to support a verdict for the plaintiff.

2. A motion for a nonsuit is in the nature of a demurrer to the evidence. It admits not only what the evidence for the plaintiff proves, but all that it *tends* to prove. The evidence given for the plaintiff must be taken to be true, together with every inference of fact which the jury might legally draw from it. Whether there was any evidence tending to prove the material allegations upon which a cause of action is

based is a question of law for the court, but whether a given amount of evidence is sufficient to sustain such allegations is a question of fact for the jury. When there is no evidence tending to sustain the plaintiff's cause of action, it is the duty of the court to grant a nonsuit: *Brown* v. *Oregon Lumber Co.,* 24 Or. 317 (33 Pac. 557); *Devroe* v. *Portland Ry., L. & P. Co.,* 64 Or. 547 (131 Pac. 304, 307); *Dillard* v. *Olalla Mining Co.,* 52 Or. 126 (94 Pac. 966, 96 Pac. 678); *Anderson* v. *Northern Pac. Lum. Co.,* 21 Or. 283 (28 Pac. 5); *Manning* v. *Portland Shipbuilding Co.,* 52 Or. 103 (96 Pac. 545); *In re Morgan's Estate,* 46 Or. 233 (77 Pac. 608, 78 Pac. 1029).

In *Dillard* v. *Olalla Mining Co.,* 52 Or. 126 (94 Pac. 966, 96 Pac. 678), Mr. Commissioner KING says: "Under the motion for nonsuit we must receive the evidence educed by the plaintiffs in the most favorable light to them, making an examination of the testimony of the defense unnecessary, however favorable to its contentions it might appear."

In *Devroe* v. *Portland Ry. L. & P. Co.,* 64 Or. 547 (131 Pac. 307), Mr. Justice BEAN says: "The rule is that, if two inferences may be fairly and legitimately deduced from the evidence, one favorable and the other unfavorable to the defendant, a question is presented which calls for the opinion of the jury. Where proof of the accident is unaccompanied by proof of facts and circumstances, from which an inference of negligence may or may not be drawn, the case cannot be determined by the court as a matter of law, but must be submitted to the jury."

In *Anderson* v. *Northern Pac. Lum. Co.,* 21 Or. 283 (28 Pac. 5), the court says: "On the other hand, if there be in the judgment of the court any legal evidence tending to prove the issue, it must go to the jury for them to determine what weight shall be attached to it."

In *Manning* v. *Portland Shipbuilding Co.,* 52 Or. 103 (96 Pac. 545), Mr. Justice EAKIN says: ''The consideration of the motion for a nonsuit involves only the question whether there was any evidence before the jury tending to establish negligence on the part of the defendant as the cause of the injury. If there is any competent evidence upon that question, it must be submitted to the jury.''

3. On this motion for a nonsuit, none of the evidence for the defendant can be considered, for none of it had been introduced when the motion was made and decided. It is impracticable to state the evidence of the plaintiff *in extenso.*

4, 5. The injury to the plaintiff was fully shown, and it was shown to have occurred at the place mentioned in the complaint and at about the time therein alleged. It was shown that the plaintiff was in the employ of the defendant and at work for him as ''chaser'' when he was injured. The plaintiff's evidence shows that the injury was caused by the breaking of the branch or limb of the maple tree to which the trip-line was attached by means of a block or pulley as alleged in the complaint; and that at the time that said branch broke the plaintiff was following said chain, as alleged in the complaint; and that, at that time, he was faithfully pursuing his line of duty in accordance with his employment. There was no evidence given by the witnesses of the plaintiff tending to prove the plaintiff was guilty of negligence, or that he was not following said butt chain in the right path. The evidence for the plaintiff tended to show that the whistling-wire was out of fix and could not be used, and that the signaling had to be done in another manner, and without the use of said wire. According to the evidence for the plaintiff, the plaintiff was in a proper place and following said butt chain in a proper manner when he was injured. All evidence that was given tending to

prove that he was in the wrong place when injured was introduced by the defense after the motion for a nonsuit was denied, and it cannot be considered in passing on said motion.

The plaintiff's main contention as to negligence is that the defendant was guilty of negligence in that the branch of the maple tree to which the block or pulley was attached, and which broke as stated, *supra,* was small, rotten and hollow, and not a fit or a proper place to which to attach said block or pulley, etc.

The evidence for the plaintiff concerning said maple branch was given by the plaintiff and two of his witnesses. Joe Nelson, a witness for the plaintiff, was a foreman of the defendant when the accident occurred. He had had experience in the logging business and is a man of intelligence. He testified that he attached the block or pulley to the branch of the maple tree by the express orders of Frank Wikstrom, the defendant's son. The latter ranked Nelson in authority under the defendant, when present. He was a sort of vice-principal.

This maple tree had three branches of nearly equal size. The block or pulley was attached to one of these branches.

The witness Nelson testified that the block or pulley was attached to one of these branches 11 or 12 feet from the ground, and that it was attached high above the ground so that it would be out of the way of the logs that would pass under it, and that he placed it there by direction of Frank Wikstrom, and he testifies (on page 55 of evidence) that he told Wikstrom that the block or pulley thus attached would not hold with the amount of line that was out, and that 2,500 to 2,800 feet of line was out. He testifies, also, that he told him to put a line there with a guy to the tree, but that they did not have any guy-line. He says that the maple branch was about 8 inches in diameter where

the block or pulley was attached, and that it seemed to be sound when the attachment was made, but that after it broke it was found to be hollow. The limb was green. He testified that they had no line that he knew of by which the block or pulley could have been attached to all three branches of the tree. He testified (on page 58) that the whistle-line was out of repair, and had been for a week, and that it was not being used. He testified that this maple broke six or eight feet above the ground. This witness testified, also, that just before the accident occurred a crotched log or small chunk lying on the left side of the road was caught by the butt chain going out rapidly, and immediately the maple branch broke and struck the plaintiff. The evidence does not show when or how said log or small chunk came to be there, or its dimensions.

Jerry La Belle, who was fireman of the donkey-engine at the time of the accident, testified that he assisted in taking the maple branch off the plaintiff, and that the plaintiff was lying in the logging trail, and he says that the branch was eight or nine inches in diameter in his judgment.

Joe Nelson (pages 98, 99) testifies that he instructed the plaintiff, when he began "chasing," how to discharge his duties; but he says that he did not instruct him as to what path or way he should go in going out from the donkey and in doing his work.

The plaintiff was unconscious for 17 days after the accident, and does not personally know how the accident occurred. But he saw the maple branch after he left the hospital, and he says that it was a "small, little rotten limb," and that he has no recollection as to what the block or pulley was attached. The plaintiff was in the Good Samaritan Hospital between six and seven months, and he was partially paralyzed.

The foregoing summary states as much of the evidence as to the negligence of the defendant as it is

deemed necessary to state in passing on the motion for nonsuit. As stated, *supra,* only the evidence for the plaintiff can be considered, as the defendant's testimony was offered after said motion was denied.

This question as to the negligence of the defendant is confined to the attaching of said block or pulley to the branch of said maple tree.

It is the settled law that the master owes his servants the duty of exercising reasonable care to provide them with a reasonably safe place in which to work, and reasonably safe machinery and appliances with which to work, and that if he fails to perform this duty, he is guilty of negligence, and that if this negligence is the proximate cause of an injury to a servant, the master is liable to an action therefor: *Geldard* v. *Marshall,* 43 Or. 438 (73 Pac. 330) ; *Millen* v. *Pacific Bridge Co.,* 51 Or. 538 (95 Pac. 196) ; *Rush* v. *Oregon Power Co.,* 51 Or. 519 (95 Pac. 193) ; *Galvin* v. *Brown & McCabe,* 53 Or. 609 (101 Pac. 671) ; *Roth* v. *North Pac. L. Co.,* 18 Or. 210 (22 Pac. 842).

The evidence for the plaintiff tends to prove that, while the plaintiff had had experience in working about sawmills, he had had no previous experience in "chasing," and that he had been chasing for the defendant only a few days.

Applying the rule stated in *Devroe* v. *Portland Ry., L. & P. Co.,* 64 Or. 547 (131 Pac. 304), that "where the proof of the accident is accompanied by proof of facts and circumstances, from which an inference of negligence may or may not be drawn, the case cannot be determined by the court as a matter of law, but must be submitted to the jury," we hold that the evidence submitted by the plaintiff in chief was sufficient to support a verdict for the plaintiff, and we cannot say affirmatively that there was no evidence to support the findings of the jury.

Testimony for the plaintiff shows that the defendant's foreman, Nelson, expressed the opinion to Frank Wikstrom, when the block or pulley was attached to the maple branch, that it was not strong enough to bear the strain, when they had out 2,500 or 2,800 feet of line. We hold that this evidence, with the other facts before the jury, was sufficient to require the case to be submitted to the jury.

6. The evidence shows that, immediately before the accident occurred, the cable caught in a forked log or chunk that seemed to be near the route of the cable, and that immediately the maple branch broke, and the block or pulley and the branch fell, causing the injury to the plaintiff. Based on these facts, counsel for the defendant claim that the proximate cause of the injury was the gathering up of that log, or chunk, by the cable, and that the defendant was not guilty of negligence because of that log's being there. The evidence fails to show when or how it came to be there, or its size. One witness called it a "small chunk." We assume that the defendant was not at fault for its being there.

What is the proximate cause of an injury is one of the vexed questions of the law. When one looks into the decisions and the treatises on negligence for guidance on this question, he finds himself immediately enveloped in the mist and fog of judicial disagreements.

21 Am. & Eng. Ency. of Law (2 ed.), page 485, gives the following definition of "proximate cause": "A proximate cause, in the law of negligence, is such a cause as operates to produce particular consequences without the intervention of any independent unforeseen cause, without which the injuries would not have occurred."

In 2 Thompson, Negligence, page 1085, the author says: "When an injury is the combined result of the negligence of the defendant, and an accident for which neither the plaintiff nor the defendant is responsible,

the defendant must pay damages, unless the injury would have happened if he had not been negligent.''

In 1 Shearman & Redfield, Negligence (6 ed.), referring to an intervening inevitable accident, in section 33, the author, *inter alia,* says: ''But it must be carefully noted that the inevitable accident, in order to furnish a complete defense in such a case, must be the *sole* cause of the injury, and, therefore, that it is no defense, if, but for the defendant's negligence, the plaintiff would not have been exposed to injury from such accident; while, if it contributed to any part of the resulting damage, it is only a defense in case that part of the damage can be accurately distinguished from the rest.''

In *The Joseph B. Thomas* (D. C.), 81 Fed. 584, the court, *inter alia,* says: '' * * For it is well settled that it is no defense in an action for a negligent injury that the negligence of a third person, or an inevitable accident, *or an inanimate thing,* contributed to cause the injury of the plaintiff, if the negligence of defendant was the efficient cause.''

In *Ahern* v. *Oregon Telephone Co.,* 24 Or. 288 (33 Pac. 406, 22 L. R. A. 635), the court says: ''This is based on the assumption that there intervened between the negligence of the defendant, if any there was, and the injury to the plaintiff, an independent adequate cause of the injury, namely, the wrongful acts of the electric company, which was the proximate cause of the injury. *What is the proximate cause of the injury is ordinarily a question for the jury.* It is only *when the facts are undisputed* that it becomes a question for the court.''

We find nothing in the evidence that would justify the court in saying as a matter of law that the forked log or chunk was the proximate cause of the injury. If the defendant was guilty of negligence in fastening the pulley to the maple branch, the fact that the cable

caught in this log, and that this may have contributed to the injury, would not exonerate the defendant from liability, unless it should appear that the accident would have happened if defendant had not been guilty of negligence. In other words, if the evidence showed that by reason of the cable's catching up said log, the accident would have happened, if the defendant had not been guilty of negligence in fastening the pulley to the maple branch, then the cable's catching hold of the forked log was the proximate cause of the injury, and the defendant was not liable.

The questions whether the defendant was guilty of negligence, and what effect the contact of the cable with said log had in causing the accident, were questions of fact for the decision of the jury, and not questions of law for the determination of the court.

7. The defendant procured from the plaintiff a written release of his right of action for this injury on November 30, 1910, while the plaintiff was in the hospital.

Where a release is under seal, many cases hold that the releasor cannot in an action at law avoid its effect by alleging and proving that its execution was obtained by fraud of the releasee. But this rule does not prevail in Oregon: *Olston* v. *Oregon W. P. & Ry. Co.,* 52 Or. 343 (96 Pac. 1095, 97 Pac. 538, 20 L. R. A. (N. S.) 915). The release in this case was not sealed.

8. This release was obtained from the plaintiff before he left the hospital. He was a stranger in the community, and had had no fair opportunity to investigate the facts from which his injury resulted. He did not have any recollection of what occurred when he was injured, or immediately prior thereto. The defendant's son, acting for the defendant, called on the plaintiff while he was in the hospital more than once for the purpose of obtaining a release, and defendant, also, called for the same purpose. Frank

Wikstrom called on the plaintiff in July, and the plaintiff says that he asked him how the injury occurred, and that Frank told him, *inter alia,* that it was an unavoidable accident. The next time Frank called the plaintiff says Frank told him that he would be all right in two months, and Frank added that *it was an unavoidable accident,* that it was not their fault, and he told the plaintiff that the latter had no case against them.

The defendant, in person, called on the plaintiff in November, and asked him how he was, and told him that he had come to take the plaintiff home. The plaintiff testified that the defendant said to him: "When you get out of the hospital, I want you to come down home, and I will give you a good home, tobacco, and spending money and clothes, and everything you need, if you don't bring this case into court; please don't bring it in, because it isn't necessary. It was an unavoidable accident. It could not be helped. I will do exactly right with you, anything you want for me to do for you." The plaintiff adds, "So, of course, I depended on Mr. Wikstrom at that time."

In November, Frank Wikstrom called again on the plaintiff for his father to obtain the release, and, according to the plaintiff, told the latter, in substance, that after the second operation the plaintiff would be all right, and that it would take him only about nine weeks to get well again; that he told plaintiff that he had a good home for him and said that he had come to have a settlement with the plaintiff, because they were afraid of the new law, and they would like to have it settled. The plaintiff says that he said to Frank, "What are you going to offer me?" and that Frank replied: "It's up to you. To tell the honest truth, *you have no case; it was an unavoidable accident.* If you promise to do what we want, when you get through here and come down, we will give you a

home, tobacco and clothes and spending money—do anything at all for you." The plaintiff says. he said, "All right," and Frank then said, "I want you to sign a little paper." He says Frank went and obtained a little paper, and the plaintiff testified that it did not seem to him that all that was in the release was in that paper, but he admitted that he signed the release, and that Frank gave him his father's check for $30, and that he read the paper before signing it.

Frank Wikstrom testified that his father wanted him to go and get a contract from the plaintiff, and that he went and obtained it. He says that his father told him that he had been talking to the plaintiff about a settlement, and he says that his father spoke about it once in a while, and he says the plaintiff wanted $25 or $30 *for clothes, tobacco* and *other necessaries.* Frank says that he had a lawyer to draw the release.

The defendant says that, when he called on the plaintiff concerning a settlement, the latter informed him that he had written to some friends for information to convince him how the accident happened. The defendant says he told the plaintiff that it was *an accident pure and simple,* and that the plaintiff said he was advised that was all that there was to it. The defendant says that the plaintiff did not seem to know much more about how the accident happened than he did, and that he was not present when it occurred. The defendant admits that he told the plaintiff, when he was negotiating for the release, that the plaintiff's injury was caused by an accident, pure and simple, and Frank Wikstrom admits that he told him substantially the same thing. The plaintiff, however, says that Frank Wikstrom told him that it was an unavoidable accident, and that the plaintiff had no case against them.

It is impracticable to set forth all the evidence on this point. But it must be borne in mind that the

plaintiff was unconscious for 17 days after the accident, and that·he testified that he could not recall at the time of the trial how the accident occurred. In other words, he did not personally know whether it was an unavoidable accident or not, nor did he know whether he had a right of action against the defendant. He seems not to have had any advice from any friend competent to advise him. He was weak and still in the hospital, and the defendant was pressing for the settlement before he should be out, probably, because he wanted the release before the plaintiff would consult counsel. If the defendant had been willing to be fair, he would not have pressed the plaintiff for a settlement until the latter had consulted a lawyer as to his rights and the defendant's liability. The defendant and his son appear to have represented to the plaintiff that he would soon be well, and that his injury was the result of an unavoidable accident and that the plaintiff had no cause of action for the injury.

We think that there was sufficient evidence tending to show that the release was obtained by fraud to require that question to be submitted to the jury, and to support the verdict. The jury must, under the charge of the court, have found that the release was obtained by fraud. Otherwise, they would have found for the defendant. We are unable to say .that there was no evidence to support the finding of the jury. It is evident that the plaintiff acted very largely upon the representations of the defendant and his son that his injury was the result of an unavoidable accident and that he had no right of action. The defendant, in his evidence, admits that he knew that the plaintiff was very badly injured. The desire of the defendant to obtain the release before the plaintiff should leave the hospital shows that he feared the result of an action.

9. This release provides that in consideration of the payment of $30 by the defendant to plaintiff, and of

the promise of the defendant to furnish the plaintiff employment, the plaintiff releases the defendant from any claim growing out of the injuries received by plaintiff on June 4th, etc. The only consideration for the release was the $30 and a promise to furnish the plaintiff employment as soon as he should be able to work. The defendant did not promise the plaintiff employment for any time, or at any price. Employment for a day would satisfy that promise, and presumably the plaintiff would earn his wages. Hence all that the plaintiff received or was to receive was the $30 for releasing his claim for injuries for which the jury found $5,000. The smallness of the consideration paid was a fact that the jury had a right to consider on the question of fraud. Would a man in his senses, unless deceived by the representations of others, release his right to recover damages for such an injury for the paltry sum of $30?

10. If the defendant represented to the plaintiff, in order to prevail on him to execute the release, that the accident was unavoidable, and that he had no cause of action against him, without believing said representations to be true, and the plaintiff believed said representations, and, so believing, executed the release, such representations constituted fraud and vitiated said release, if the representations were false.

We hold that there was no error in submitting the question of fraud to the jury: *Olston* v. *Oregon W. P. & Ry. Co.,* 52 Or. 355 (96 Pac. 1095, 97 Pac. 538, 20 L. R. A. (N. S.) 915); *Foster* v. *University L. & S. Co.,* 65 Or. 46 (131 Pac. 737).

11. Counsel for the defendant claim that no tender of the $30 paid by the defendant for the release was made, and that for this reason this case should be reversed.

The authorities seem to be about equally divided on the question whether, in cases where releases are ob-

tained by fraud, it is necessary for the releasor to tender back the consideration paid for the release.

In volume 6 of Thompson's Commentaries on the Law of Negligence (section 7379), the author on this point says: "The authorities are by no means harmonious on this question, but indeed seem to be pretty evenly divided. There is a line of cases, 'holding that the return of the consideration, or an offer to return it, is not a prerequisite to the maintenance of the action by the releasor for damages if the release was obtained by fraud,'" etc.

In 38 Cyc. 135, the rule as to *waiver* of tender is stated thus: "Similarly, a tender is *waived* where the tenderee makes any declaration which amounts to a repudiation of the contract, or takes any position which would render a tender, so long as that position taken by him is maintained, a vain and idle ceremony, as when he expressly declares that he will not accept the tender if it is made, or in any way obstructs or prevents a tender by admitting that a tender would be fruitless, by declaring the contract to be at an end, or, in a threatening tone, ordering plaintiff off the premises."

In 28 Am. & Eng. Ency. of Law (2 ed.), page 5, the author says: "The maxim that the law does not compel one to do a void or useless thing applies to the case of tender of performance of an obligation. Hence a tender is not necessary where it appears that, if made, it would have been fruitless." On page 7 of the same book, the author says: "When it is clear that a tender will not be accepted, it need not be made."

To substantially the same effect are *Guillaume* v. *K. S. D. Land Co.*, 48 Or. 405 (86 Pac. 883, 88 Pac. 586); *West* v. *Washington R. Co.*, 49 Or. 436 (90 Pac. 666); *Merrill* v. *Hexter*, 52 Or. 144 (94 Pac. 972, 96 Pac. 865).

In *Guillaume* v. *K. S. D. Land Co.*, 48 Or. 405 (86 Pac. 883, 88 Pac. 586), Mr. Justice MOORE says: "The rules

of law do not require the performance of vain things, and, as the defendant would not have accepted the remainder of the purchase price of the block as a consideration for the execution of the deed, the plaintiff was not obliged to make a tender thereof as a condition precedent to his right to a decree for specific performance.''

It is certain from the pleadings and the evidence in this case that if the plaintiff had tendered to the defendant the $30, either before or after he begun this action, the defendant would have refused to accept it. He obtained said release to be used as a defense to any action that the plaintiff might bring for damages, and he pleaded it as a separate defense, and relied on it as a defense throughout the trial in the court below. If the plaintiff had actually offered him said sum as a tender, and he had accepted it as such, said offer and the acceptance thereof would have operated as a rescission of said release, and he could not then have relied on the release as a defense. To tender him the $30, therefore, would have been a vain thing, as, manifestly, the offer would have been rejected. Under the facts as pleaded and shown by the record, a tender was *waived* and not necessary.

It is unnecessary to decide whether the plaintiff made a tender, or did what was equivalent thereto, as the record shows facts constituting a waiver thereof; nor is it necessary to decide whether a tender is necessary in any case where a release has been obtained by fraud.

The instructions given by the court covered fairly and fully every point in the case, and the court did not err in refusing to give any of the charges requested by the defendant. The court has a right to instruct the jury in its own language, and it is not error to refuse to give a requested charge that states the law

correctly, if the instructions given cover the same point and state the law correctly.

The counsel for the defendant in their brief (page 15) say that they confine their argument to the main points. We have covered the points made in the brief and in the oral argument.

The testimony for the defendant contradicted much of the evidence for the plaintiff, but, as it was given after the motion for a new trial was overruled, we could not consider it in passing on that motion. There was evidence to support the verdict, and we have no authority to pass on the weight of the evidence. It was the exclusive province of the jury to pass on the weight of the evidence and the credibility of the witnesses.

We find no error in the record, and the judgment of the court below is affirmed. Affirmed.

Mr. Chief Justice McBride and Mr. Justice Moore concur.

Mr. Justice Burnett dissents.