Argued September 16, affirmed September 29, 1914.

## BISSETT *v*. PORTLAND RY., L. & P. CO.*

(143 Pac. 991.)

**Release—Validity—Right to Contest—Conditions Preceding.**

1. Where a passenger, injured in a railroad wreck, while worried about reaching her destination in time to meet friends, was paid $20 to enable her to get there, and was asked to sign a receipt, and signed a paper offered, she was not required to return the amount received as a condition precedent to recover for her injuries, though the paper signed was in fact a release of her claim against the railroad.

[As to release by deceased as affecting right to recover for death by wrongful act, see note in Ann. Cas. 1914D, 499.]

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.    Statement by MR. JUSTICE MOORE.

This is an action by Helen Bissett against the Portland Railway, Light & Power Company, a corporation, to recover damages for a personal injury alleged to have been caused by the defendant's negligence.

The answer denies the material averments of the complaint, and for a further defense alleges that in consideration of $20, paid by the defendant to the plaintiff, she by a written instrument relinquished all claim for damages that she may have sustained in consequence of the injury of which she complains.

The reply denied the averments of new matter in the answer, except that it admitted that at the time of the accident the plaintiff signed a writing which is the instrument referred to in the answer.    For further reply it is alleged, in substance, that shortly after receiving the injuries referred to the defendant, by its claim agent, offered the plaintiff $20 to enable her to reach

*As to the necessity of return or tender of consideration for release of claim for personal injuries set aside on ground of fraud, see note in 35 L. R. A. (N. S.) 660.    REPORTER.

her destination with as little inconvenience as possible, and thereupon requested her to sign a receipt therefor, which she did; that if the writing was a release the defendant's agent obtained it by falsely and fraudulently representing to her that it was a receipt to evidence the spending of $20; that such statement was false, and so known to be by the person making it; that at the time the writing was signed the plaintiff was in the midst of the railroad wreck, set forth in the complaint, and then suffering great physical pain and mental anguish as the result of a collision, all of which facts were well known to the defendant by its agent, and in that condition she, believing his representations to be true and relying thereon, signed the writing, as a receipt, not then knowing that it was a release; and that she never had received from the defendant any compensation for the injuries inflicted.  At the trial, both parties having introduced their entire evidence and rested, the defendant's counsel moved for a judgment of nonsuit, which was denied.  The cause was then submitted to the jury, which found for the plaintiff in the sum of $4,200, and, judgment having been rendered on the verdict, the defendant appeals.    AFFIRMED.

For appellant there was a brief with an oral argument by *Mr. F. J. Lonergan.*

For respondent there was a brief and an oral argument by *Mr. Wilfred E. Farrell.*

MR. JUSTICE MOORE delivered the opinion of the court.

The only question to be considered is whether, under the testimony given at the trial, it was incumbent upon the plaintiff to return the money which she had received as a condition precedent to her right to main-

tain this action.   Her testimony is to the effect: That about 3 o'clock in the afternoon of May '8, 1911, she paid her fare and became a passenger on the defendant's electric cars from Portland, Oregon, to Boring, in this state.   As the train, in the front car of which she was riding, rounded a curve at full speed in a deep cut, it collided with a freight train.   That she did not know how she escaped from the car, whether through the door or the roof; her first realization of the accident appearing when she saw her torn hat lying on the embankment and she found herself standing on the track beside the wreck, having sustained a scalp wound and other severe bruises about her head, face, body and limbs.   That after waiting in the rain about an hour a relief train arrived from Portland, and with it came the defendant's claim agent, who inquired of the witness where she was going.   That, replying to the inquiry, she told him that she had expected to visit friends living in the country about six miles from Boring, and that they were to have met her at that station; but having been delayed by the accident, and not being able to reach that village until late in the evening, she did not know what to do.   Thereupon the agent said: "'Here is $20.   It will get you out there.   Sign this receipt.' * ·* He did not read the writing to me, nor did I read it."   That she signed the writing, relying upon the agent's representations, and supposing it to be a receipt for the money.   That when she appended her name to the paper she was greatly excited and afraid she would not get away from the scene of the accident in time to meet her friends.   The testimony further shows that in consequence of the injuries so received the plaintiff was unable to resume work until the following November; that she now suffers much

pain in her side, has grown very nervous, and is much emaciated.

Rev. John Cummisky, a Catholic clergyman, who at the time of the accident occupied a seat in the rear car of the train, testified that he subscribed his name as a witness to the plaintiff's signature on the writing in question. Referring to her mental condition at that time, he, in answer to the court's direction, "State what her conduct was, how she acted," replied, "She showed a condition of being greatly shaken up, and in no condition whatever to sign anything." Alluding to a remark made by the defendant's claim agent when the plaintiff accepted the money, the witness further testified:

"I heard him say to her that the $20 was to defray expenses for the rest of the journey on account of being detained—on account of the wreck.

"Q. What did he say about the paper when he handed it to her to sign, if anything?

"A. He asked her to sign this as a receipt."

Without adverting to any additional authorities, the judgment herein must be affirmed upon the decisions rendered in the cases of *Foster* v. *University Lumber Co.,* 65 Or. 46 (131 Pac. 736), and *Woods* v. *Wikstrom,* 67 Or. 581 (135 Pac. 192), to which we adhere. The defendant undertook safely to transport the plaintiff to her destination, and because she was detained by the wreck, and feared she would not arrive in time to meet her friends that evening, the claim agent, who hastened to the scene of the accident, solicitous for the welfare of the passengers, and recognizing a moral obligation on the part of his principal immediately to relieve the injured, offered to donate to her $20 to enable her to resume her journey. The

plaintiff then being only 18 years old, and probably not having the wisdom of more experienced women, accepted the money as compensation for the hindrance which was occasioned by the accident. There was, therefore, a meeting of the minds of the contracting parties with respect to the payment and receipt of the money, as far as can be ascertained from the language employed. She is presumed to have known the contents of the paper to which she subscribed her name, but owing to the shock which she had received, and her fear, occasioned by the delay, that she would not reach her destination that night, and relying on the agent's representation that the writing was a receipt for the money she signed it.

We place this decision on the elementary proposition that the donation by the defendant's agent was in consideration of a recognition of a moral obligation by his principal, and the payment having been made on account thereof the contract became executed, and hence no rescission thereof was necessary. The law applicable to the facts involved may be deduced from the following illustration: The owner of a horse loaned it to another, to whom, pursuant to the terms of an express contract, he sold a sheep, receiving the value thereof; but the purchaser fraudulently took a bill of sale of the horse without the owner's knowledge. In such case it cannot be said that there was no *aggregatio mentium* as to the sale of sheep, or that the consideration therefor should be returned before an action to recover the value of the horse should be maintained. In the case supposed the consideration for the sheep was legal, while in the case at bar it was only moral; but in principle there can be no difference, when the latter contract is fully executed.

The defendant could not restore to the plaintiff the delay which had resulted from the wreck of the car in which she was a passenger, and this being so she was under no obligation to return the money which she had received as a compensation for the hindrance and as a donation with which to discharge anticipated obligations. The evidence was sufficient to authorize a submission of the cause to the jury, and in refusing to grant a nonsuit no error was committed.

The judgment is affirmed.    Affirmed.

Mr. Chief Justice McBride and Mr. Justice Mc-Nary concur.

Mr. Justice Burnett dissents.