Argued May 6, affirmed July 15, 1919.

## FRANKLIN v. WEBBER.

(182 Pac. 819.)

**Master and Servant—Workmen's Compensation—Statutes—Construction—"Shaft."**

1. Employers' Liability Act, providing that "shafts, wells, floor openings and similar places of danger shall be inclosed" in its reference to "shafts" contemplates openings in the ground or in structures, and not revolving shafts in machinery.

**Master and Servant—Workmen's Compensation — Evidence—Subsequent Repairs or Alterations.**

2. In an action under the Employers' Liability Act for injuries to an employee caught in an unguarded shaft on a caterpillar engine, it was competent to show the subsequent installation of a guard over such shaft to demonstrate the practicability of guarding the shaft without impairing the efficiency of the machine.

**Evidence—Workmen's Compensation—Declarations Against Interest.**

3. In an action under the Employers' Liability Act for personal injuries sustained by being caught by an unguarded shaft on a caterpillar engine, evidence by plaintiff that after the injury defendant came to him and said he had fixed the machine by putting a box over it was admissible as a declaration against interest in view of Section 727, subdivision 2, L. O. L.

Release—Fraudulent Release—Return of Consideration—Necessity—
    Deduction from Verdict.

4. Where a release for personal injuries is obtained by fraud, a return or tender of the consideration paid is not a requisite to maintaining an action for damages by plaintiff, and upon a judgment for him it is sufficient if the amount received on the release be deducted from the verdict.

[As to accident or injury within act—Disease as accident under Workmen's Compensation Act, see note in Ann. Cas. 1918B, 309.]

From Umatilla: GILBERT W. PHELPS, Judge.

In Banc.

Bruno Webber was engaged in farming about nine hundred acres of land. The seeding was done with three drills drawn by a caterpillar engine. Between the engine and drills was a cart upon which a supply of wheat was kept, so that for the purposes of description we may say that the seeding was done with a train consisting of a caterpillar engine, a cart and three drills. This train was operated by two persons, an engineer and a drill-tender. The engineer ran the engine, and the drill-tender kept the drills filled with seed.

Webber employed Howard Franklin to act as drill-tender. The plaintiff was injured on November 5, 1916, the second day of his employment. The injury occurred while Franklin was on the engine and at a time when the engine was in motion. Among the parts of the engine was an unguarded shaft. This shaft was revolving and it caught Franklin's clothing, drew his left leg into the machinery and seriously injured him.

Franklin was at once taken to a hospital. Webber held an employers' liability insurance policy. On November 28th, a couple of weeks after the accident, an agent of the insurance company which had issued the policy called at the hospital where he interviewed Franklin, and as a result of the interview Franklin

signed and delivered to the agent a written release which reads as follows:

"For the sole consideration of the sum of One hundred sixty and no/100 Dollars, this 28th day of November 1916 received from Bruno Webber I do hereby acknowledge full satisfaction and discharge of all claims, accrued or to accrue, in respect of all injuries or injurious results, direct or indirect, arising or to arise from an accident sustained by me on or about the 5th day of November 1916 while in the employment of the above.

"$160.00."

The insurance company paid and Franklin received from it the sum of $160. There is testimony to the effect that the company, at some time afterwards, paid doctor and hospital bills aggregating about $600.

The plaintiff brought this action under the Employers' Liability Act: Chapter 3, Laws 1911. The complaint alleges that the duties assigned to plaintiff required him not only to attend to the drills but also to oil certain parts of the engine and that this was a work involving risk and danger; that the defendant failed to provide any guard or other safety device for the shaft, notwithstanding it was practicable to have guarded the shaft without impairing the efficiency of the machine.

The answer denies the charge of negligence, avers that the plaintiff was hurt by his own sole negligence because his employment did not require him to be on the engine, and pleads a satisfaction of the claim and release from liability.

Besides denials, the reply avers that the injury sustained by the plaintiff together with an operation performed upon his leg and drugs administered for the relief of pain and suffering had rendered him physically and mentally weak and that while in such weak

condition the insurance company through fraud and
fraudulent representations obtained the writing which
the defendant relies upon as a release.

A trial resulted in a verdict and judgment for the
plaintiff in the sum of $3,791.66. The defendant
appealed.          AFFIRMED.

For appellant there was a brief over the names of
*Messrs. Senn, Ekwall & Recken,* and *Messrs. Raley
& Raley,* with an oral argument by *Mr. F. S. Senn.*

For respondent there was a brief over the names of
*Mr. Walter C. Winslow, Mr. Donald W. Miles* and *Mr.
R. I. Keator,* with an oral argument by *Mr. Winslow.*

HARRIS, J.—1. Calling attention to the Em-
ployers' Liability Act as diagramed in *Camenzind* v.
*Freeland Furniture Co.,* 89 Or. 158, 168 (174 Pac. 139),
the plaintiff has argued that the words "shafts * *
shall be inclosed," appearing after number 23 in the
diagram, make it the absolute duty of the master to
inclose a revolving shaft. The complete clause, con-
taining the quoted words, reads as follows:

"Shafts, wells, floor openings and similar places
of danger shall be inclosed."

The term "shaft" has various significations; but
the companion words "wells, floor openings" and es-
pecially the words "and similar places of danger"
make it plain that the "shafts" referred to are open-
ings in the ground or in structures and not revolving
mechanical shafts like the one which injured the
plaintiff.

The rule followed in this jurisdiction compelled the
plaintiff to bear the burden of showing that it was
practicable to guard the revolving shaft: *Cameron* v.

*Pacific Lime & Gypsum Co.*, 73 Or. 510, 517 (144 Pac. 446, Ann. Cas. 1916E, 769).

The defendant interposed a motion for a nonsuit and afterwards he moved for a directed verdict; and he now contends that both motions should have been allowed because there was no evidence to show that defendant was negligent and because there was no evidence upon which the jury could have found that "it was practicable to guard the shaft without impairing the efficiency of the machine."

Franklin alleged and Webber denied that, when injured, the former was in a place where his duties required him to be. Franklin testified that Webber specifically directed him to oil certain parts of the engine and to do the oiling while the machine was in motion so that "there will be no stops and you will not lose any time." Evidence for the defendant contradicted the testimony of the plaintiff. The issue made by the pleadings was carefully submitted to the jury with appropriate instructions. The verdict of the jury necessarily implies a finding that when injured the plaintiff was on the engine in the performance of duties assigned to him; and hence the verdict forecloses further debate upon the question as to whether or not Franklin was hurt while in the performance of his work.

The defendant says that there was no evidence to show that it was practicable to guard the shaft without impairing the efficiency of the engine. However, Franklin answers by pointing to testimony of an admission made by Webber; but Webber replies by arguing that "such testimony is self-serving and it does not in any way tend to prove negligence." Franklin testified that Webber came into the hospital at some time after the former was injured and in the

course of a conversation "about how I happened to get hurt" Webber explained that there was not much danger of anybody else getting hurt and "he said he had fixed the machine; and I asked him how and he said he had put a box over it of some sort; he didn't say what kind, whether it was a wooden box, steel box, or what."

2. It was competent to show the subsequent installation of a guard for the purpose of demonstrating the practicability of guarding the shaft without impairing the efficiency of the machine; and, indeed, as stated by Mr. Justice McBRIDE in *Love* v. *Chambers Lumber Co.,* 64 Or. 129, 135 (129 Pac. 492),

"No better evidence could have been introduced for this purpose than to show that after the accident the machinery had been so guarded, and that such safeguards had not in any way impeded or interfered with its operation": *Foster* v. *University Lumber Co.,* 65 Or. 46, 64 (131 Pac. 736); *Malloy* v. *Marshall-Wells Hardware Co.,* 90 Or. 303, 311 (173 Pac. 267, 175 Pac. 659, 176 Pac. 589).

3. When Franklin testified to the admission ascribed to Webber the former was not repeating a self-serving declaration which he himself had previously uttered; but on the other hand he was simply telling the jury what Webber had told him; and since the declaration made by Webber was against his interest it was obviously competent, for it is expressly provided in Section 727, subdivision 2, L. O. L., that evidence may be given on the trial of "the declaration * * of a party as evidence against such party": *State* v. *Robinson,* 32 Or. 43, 51 (48 Pac. 357); *State* v. *Heidenreich,* 29 Or. 381, 383 (45 Pac. 755); *Feldman* v. *McGuire,* 34 Or. 309, 315 (55 Pac. 872); *Anderson* v. *Adams,* 43 Or. 621, 629 (74 Pac. 215); *Meagher* v. *Eilers Music House,*

77 Or. 70, 76 (150 Pac. 266); 1 R. C. L. 468, 473.
Moreover, there was evidence explaining the location
of the shaft and the relative positions of the shaft and
certain other parts of the caterpillar engine. Ap-
parently the type of engine used by Webber was in
more or less common use; and it is fair to infer from
the record that the engine was as well known and
understood by men engaged in or familiar with farm-
ing as many other appliances commonly used on farms.
The jurors were informed about the parts of the en-
gine which were close to the shaft and they were told
how a guard would have to be constructed so as to
avoid interference with those parts. In brief, in addi-
tion to the testimony about the admission of the de-
fendant, there was evidence from which the jury in the
exercise of their common sense could determine
whether it was practicable to guard the shaft without
impairing the efficiency of the machine.

The court instructed the jury to determine the
amount of compensation to which the plaintiff was
entitled, if they found that the defendant was liable,
and then to deduct "any sum paid by the defendant or
on his behalf to plaintiff on account of the execution
of the release." The defendant requested and the
court refused to give the following instruction:

"It was the duty of the plaintiff before bringing
this action to return to the defendant any sums of
money which were paid to him or for him by reason
of this injury. It is admitted that plaintiff received
$160, and I instruct you that it was his duty to return
or offer to return this sum to the defendant and if
you find from the evidence that he did not return this
amount to the defendant nor offer to return it then he
cannot recover in this case and your verdict must be
for the defendant."

4. It is urged that the instruction given by the court was error and that the court should have given the instruction requested by the defendant. The plaintiff alleged that the release was procured through fraud. The defendant denied the charge. Franklin introduced testimony which if believed by the jury supported the accusation. Webber introduced testimony which if believed by the jury completely refuted the charge made by Franklin. The instructions of the court concerning the issue of fraud were complete and very clear. The verdict of the jury precludes further discussion about the issue of fraud; and hence, on this appeal we must assume that the release was obtained as described by the plaintiff. The defendant contends that the plaintiff should have alleged and proved the return of the money received upon the release or at least an offer to return the amount. The holding in *Bissett* v. *Portland Ry., L. & P. Co.*, 72 Or. 441 (143 Pac. 991), relieved Franklin from returning the money or even offering to return it. As said in *Marple* v. *Minn. & St. L. R. Co.*, 115 Minn. 262 (132 N. W. 333, Ann. Cas. 1912D, 1082, 1084),—

"it would be a profitless proceeding to send this case back for a new trial in order that defendant may have an opportunity to refuse an offer of plaintiff to return the money received. The offer is nothing. It is the actual return of the money received that is the material thing. This has been done by the verdict."

While there is a contrariety of opinion among judicial decisions, nevertheless the larger number of cases support the rule already adopted in this state that it is unnecessary to return or tender the consideration for a release obtained by fraud as a requisite to the maintenance of an action for damages resulting from a personal injury, since it is sufficient if the amount received upon the release is deducted from the verdict

if one is obtained against the defendant: 35 L. R. A. (N. S.) 660, note.

Moreover, in *Woods* v. *Wikstrom,* 67 Or. 581, 602 (135 Pac. 192), this court said in substance, that it was certain from the pleadings and evidence in that case that if the plaintiff had tendered the sum received upon the release either before or after the commencement of the action the defendant would have refused to accept it for the reason that the defendant obtained the release to be used as a defense to any action brought against him and he pleaded it and relied upon it throughout the trial; and if the defendant had accepted a return of the money such acceptance would have operated as a rescission of the release and precluded the defendant from relying upon it as a defense. The statement made in *Woods* v. *Wikstrom* is as applicable here as it was there. Here as there the release was obtained for the express purpose of securing a satisfaction of and discharge from liability. Webber denied liability and pleaded the release in support of his denial. If the sum of $160 had been tendered to and received by the defendant he could not have relied upon the release as a defense; and consequently we can here say, with a degree of assurance equal to that appearing in *Woods* v. *Wikstrom,* that an offer to return the money received upon the release would have been a vain thing "as, manifestly, the offer would have been refused." However, on the authority of *Bissett* v. *Portland Ry., L. & P. Co.,* 72 Or. 441 (143 Pac. 991), the instruction given by the court was correct, and the instruction requested by the defendant was properly refused: See, also, *Foster* v. *University Lumber Co.,* 65 Or. 46 (131 Pac. 736).

The judgment appealed from is affirmed.

AFFIRMED.