[No. 1243.]

LOUISA GODCHAUX, Petitioner, *v.* L. N. CARPENTER
    et al., COUNTY COMMISSIONERS OF HUMBOLDT
    COUNTY, Respondents.

COUNTY COMMISSIONERS—LIMITED JURISDICTION—PRESUMPTIONS.—A board

---

1  53 Am. Dec. 367.

of county commissioners is a body possessing but limited and special powers. When its authority to do a particular thing is questioned, the record must affirmatively show all the facts necessary to give it authority to perform the act, and when this is not shown the presumption is against its jurisdiction.

IDEM—EMINENT DOMAIN.—The exercise of the right of eminent domain is necessarily in derogation of private rights, and the rule is, that the authority is to be strictly construed.

HIGHWAYS—PROCEEDINGS TO ESTABLISH—JURISDICTIONAL DEFECTS.— The board of county commissioners of Humboldt County granted a petition for the establishment of a public road. The petition did not disclose the names of the owners of land through which the road was to pass, nor did the records of the board show that they had found that a majority of the resident tax-payers of the district, according to the last previous assessment roll, had signed the petition, as required by statute: *Held,* that compliance with the statute was a jurisdictional fact, which must appear, and that the action of the board was null and void.

APPLICATION for writ of *certiorari.*

*M. S. Bonnifield* and *H. F. Bartine,* for Petitioner:

I.   Section 4, stat. 1877, 142, under which the commissioners proceeded, makes no provision for the payment of compensation to the owner, and is therefore unconstitutional. (Const., art. 1, sec. 8; Cooley, Cons. Lim. 699; *Curran* v. *Shattuck,* 24 Cal. 427; *Bensley* v. *Mountain L. W. Co.,* 13 Cal. 306;[1] *Trumpler* v. *Bemerly,* 39 Cal. 491.)

II.   The section is also unconstitutional in omitting to provide for notice to the owner of the property. (*Wright* v. *Cradlebaugh,* 3 Nev. 349; *Dayton M. Co.* v. *Seawell,* 11 Nev. 411.)

III.   The law provides that the commissioners may proceed to locate, open, and establish public roads upon the petition of a majority of the resident tax-payers of the district. The petition must show upon its face that it is the petition of such majority. This is a jurisdictional fact which must be made to appear *prima facie* before the board has any power to consider the subject-matter. (*Twaddle* v. *Comm'rs,* 12 Nev. 17.)

IV.   When the power of the court to hear and determine depends upon the existence of certain facts, such facts must be both pleaded and proved. (*Bennett* v. *Bennett,* 28 Cal. 599; *Washburn* v. *Washburn,* 9 Cal. 475.)

V.   No person can be deprived of his or her property by any legal proceeding without notice, whether the statute makes pro-

___

[1] 73 Am. Dec. 575.

vision for it or not.    (*Curran* v. *Shattuck*, 24 Cal. 433; *Wright*
v. *Cradlebaugh*, 3 Nev. 349.)

[No brief on file for respondent.]

By the Court, LEONARD, C. J.:

This is an application for a writ of *certiorari* to review the
action of the board of county commissioners of Humboldt
County, in this state, in making the following order, May 5,
1886, to wit: " The board, having under consideration the pe-
tition of Edward Lyng and other resident tax-payers of Willow
Point road district, praying for the location, opening, and es-
tablishing, for public use, of a public road and highway, de-
scribed in said petition, and situated in said road district, and
evidence having been produced before the board, and heard by
it in said matter, and it appearing to the board therefrom that
said petition was signed by a majority of the resident tax-pay-
ers of said Willow Point road district, and was in all respects
in conformity with the law in such case made and provided,
the board granted said petition, and appointed P. W. Cunning-
ham, a disinterested person, as road viewer on its part, with
such powers and authority as are provided by law."

Plaintiff is the owner of the southwest quarter of the south-
east quarter of section 10, township 39 north, range 39 east,
through which said road, if opened, will pass. The statute pro-
vides that, " at any time when a majority of the resident tax-
payers of a road district, according to the last previous assess-
ment roll, shall petition the county commissioners of their
respective counties for the location, opening for public use, es-
tablishment, change, or vacation of any public road or highway,
or road to connect with any highway heretofore established,
any street, or alley in any incorporated town in such county,
setting forth in such petition the beginning, course, and ter-
mination of such road or highway, street or alley, proposed to
be located and opened for public use, established, changed, or
vacated, together with the names of the owner or owners of
the land through which the same will pass, said petition may
be presented to the county clerk of said county, and the clerk
shall lay said petition before the board of county commissioners
at their next meeting after the reception of said petition, and

thereupon said board of commissioners shall, within thirty days thereafter, proceed to locate, open to public use, establish, change, or vacate such road, highway, street, or alley. Before opening any new road, street, or alley, or changing same, through private property, such property shall be condemned for public use, as follows: *

It is alleged in the petition filed in this court that plaintiff will sustain great damage and injury by the opening of said road, and that, unless restrained, defendants intend to, and will, proceed to locate, establish, and open said road, through plaintiff's said land, until the same is completed, to plaintiff's irreparable damage, and that, for several reasons stated, the board exceeded its jurisdiction in making the order before recited.

It is well settled that a board of county commissioners is a body possessing but limited and special powers; that when its power or authority to do any particular thing is questioned, the record must show affirmatively all the facts necessary to give it authority to perform the act complained of, and that when this is not the case, the presumption is against its jurisdiction. (*Swift* v. *Commissioners of Ormsby Co.*, 6 Nev. 97; *State* v. *Board of Commissioners*, 12 Nev. 19; *Curran* v. *Shattuck*, 24 Cal. 435; *Finch* v. *Tehama Co.*, 29 Cal. 454.)

It is just as well established, also, that " the exercise of the right of eminent domain, whether directly by the state or its authorized grantee, is necessarily in derogation of private rights; and the rule is, that the authority is to be strictly construed. * * * What is not granted is not to be exercised." (*Lance's Appeal*, 55 Pa. St. 26.)

*Stanford* v. *Worn*, 27 Cal. 172, was an action to condemn lands for state prison purposes, under a statute passed to that end. The court said: " In order to render proceedings of this character effectual for any purpose, the provisions of the statute by which they are authorized must be strictly followed. The power must be exercised precisely as directed, and there can be no departure from the mode prescribed without vitiating the entire proceedings." " When certain steps are authorized by statute in derogation of the common law, by which the title of one is to be divested and transferred to another, every requisite having the semblance of benefit to the former must be strictly complied with." (*Atkins* v. *Kinnan*, 20 Wend. 241.[1]) " The

1　32 Am. Dec. 534.

right to appropriate private property to public uses lies dormant in the state, until legislative action is had, pointing out the occasions, the modes, conditions, and agencies for its appropriation.  Private property can only be taken pursuant to law; but a legislative act declaring the necessity, being the customary mode in which the fact is determined, must be held to be, for this purpose, 'the law of the land,' and no further finding or adjudication can be essential, unless the constitution of the state has expressly required it.  When, however, action is had for this purpose, there must be kept in view that general as well as reasonable and just rule, that whenever, in pursuance of law, the property of an individual is to be divested by proceedings against his will, a strict compliance must be had with all the provisions of law which are made for his protection and benefit, or the proceedings will be ineffectual.  Those provisions must be regarded as in the nature of conditions precedent, which are not only to be observed and complied with before the right of the proper owner is disturbed, but the party claiming authority under the adverse proceedings must show affirmatively such compliance.  (Cooley, Const. Lim. 657; and see *Nichols* v. *Bridgeport*, 23 Conn. 208; *Kroop* v. *Forman*, 31 Mich. 144; *Sharp* v. *Speir*, 4 Hill, 86; *Bensley* v. *Water Co.*, 13 Cal. 315; *Dalton* v. *Water Commissioners*, 49 Cal. 222; *Mitchell* v. *Railroad & C. Co.*, 68 Ill. 286; *Sharp* v. *Johnson*, 4 Hill, 92.[1])·

The last case shows that the twenty-fourth section of the act incorporating the village of Williamsburg provided as follows: "The trustees of said village shall or may, on an application in writing of a majority of the persons owning the property described in any such application, and who are intended to be benefited thereby, or whose property shall be assessed for the payment of the expenses attending the same, and upon such application they are hereby fully authorized and empowered to widen and alter all public reads, streets, and highways, already laid out, in said village."  The court said: "Let us see what authority the trustees had to proceed.  They had a paper signed by fourteen persons, in which they 'suggest the propriety of having the street opened.' * * * Although the petitioners say that they are 'inhabitants in and about North Third Street,' they do not 'suggest' that they own a single foot of land in the street, or elsewhere; nor is any land 'described' in the application, as the statute requires.  There are only fourteen peti-

tioners, while there are forty-four different assessments. * * *
The burden lay on the defendant of showing that the applica-
tion came from a 'majority of the persons owning the property,'
and he has not only failed to show it, but the evidence is nearly
or quite conclusive that a majority did not apply. The trus-
tees, therefore, had no authority whatever to open the street,
and the plaintiff's land in the site of the street has not been
taken according to law. She owns it still."

We quote also from the court's opinion in the case of *In re
Grove St.*, 61 Cal. 444. The case shows that the second and
third sections of the act "to provide for the opening of streets
in the city of Oakland," provided that proceedings should be
commenced by petition of five or more residents and free-
holders within said city, addressed to the city council, the
petition to contain, among other things, "a statement that, in
the opinion of the petitioners, the public interests require that
the improvement asked for (describing it generally) should be
made." But the statement of the residents and freeholders to
the city council was that, "in the opinion of the petitioners, the
improvement asked for *should be made.*" Said the court: "It
may be said it is enough if the freeholders express a desire that
the street be opened, or other improvements made. This must
be all required by the statute, since it must be presumed the
legislature has not attempted to give the power,—power which
it could not give,—to five or more residents and freeholders of
deciding whether 'the public interests require' a municipal
improvement; in other words, its necessity or expediency. But
the statute does not purport to confer such power upon the
petitioners. The fourth section of the act provides that at the
regular meeting next after the meeting at which the petition of
freeholders is presented, 'the council may by resolution deter-
mine the lands to be benefited,' etc. Thus the ultimate power
of determining the necessity and expediency of the work is
placed in the city council. The power, however, like every
other power of the council, is derived from the charter or
statute, and can be employed only in the manner and with the
limitations prescribed in the statute. The statute authorizes
the city council to proceed with the acts looking to the open-
ing of the street only after a certain petition shall be filed with
the clerk. It was for the legislature to prescribe, and the leg-
islature has prescribed, what the petition shall contain. Until

a petition is presented containing substantially all that the law declares shall be inserted in a petition to initiate the proceeding, the council has no power or jurisdiction to act with reference to the opening of a street. A statement in the petition, that in the opinion of the petitioners, an improvement 'should be made,' is not in substance the same as a statement that, in the opinion of petitioners, ' the public interests require the improvement snould be made.' "

In the case before us, it was the duty of the board, and consequently within its jurisdiction, in thirty days after March 2, 1886 (its first meeting after the petition was filed having been held on that day), to proceed with the acts looking to the opening of the road in question, as the statute required; provided, the petition contained: *First,* a majority of the resident taxpayers of Willow Point road district, according to the last previous assessment roll; and *second,* the beginning, course, and termination of said road; and *third,* the names of the owners of the land through which the same would pass.

The statute does not require, in terms, the first fact to be stated in the petition, but it does the second and third. If we admit that the first fact may have been determined by the board, upon evidence presented, although not shown by the petition (*Hetzel* v. *Board of Commissioners of Eureka Co.,* 8 Nev. 309), yet it must appear affirmatively from the records of the board that the board found as a fact that " a majority of the resident tax-payers of Willow Point road district, according to the last previous assessment roll," had signed the petition. What the board did find is, that " said petition was signed *by a majority of the resident tax-payers* of said Willow Point road district. It was not found that a majority of the resident tax-payers of the road district, *according to the last previous assessment roll,* had signed it. The board found that a majority of the *then* resident tax-payers of the road district had signed the petition, while the statute required a majority according to the last previous assessment roll.

Eleven persons signed the petition before it was filed, and four after filing. The most that can be claimed is, that the board found that, at the time of the hearing, fifteen constituted a majority of the resident tax-payers of the road district; that at that time there 'were not more than twenty-nine in all. But those findings do not show that no more than twenty-nine res-

ident tax-payers of the road district appeared upon the last previous assessment roll. That may have shown more than twenty-nine, and hence more than fifteen may have been required to constitute the requisite number under the statute. The legislature had the right to require the majority to be estimated from the number appearing on the last previous assessment roll, and it did so. It could have required a petition signed by every resident tax-payer, or by a number less than a majority.

In the present case, the board had no power to locate the road in question without finding as a fact, from competent evidence, that a number of resident tax-payers of the road district, exceeding one half the number appearing upon the last previous assessment roll, had signed the petition. This was a jurisdictional fact, without which the board had not power to make the order complained of. Again, under the statute, it was just as necessary to insert in the petition the names of the owners of the land through which the road would pass as it was to set forth therein the beginning, course, and termination of the road. The statute declares that all these facts shall be stated in the petition; and aside from the fact that their insertion is a statutory requirement, they ought to be in the petition for the protection of land-owners, and the guidance of road-viewers.

It is unnecessary to consider other questions raised by counsel for plaintiff.

The order of the board of county commissioners of Humboldt County, dated May 5, 1886, granting the petition of Edward Lyng and others to locate, establish, and open the road therein described, and to run in part through the lands of Louisa Godchaux hereinbefore mentioned, is declared and adjudged to be null and void, and plaintiff will have judgment for her costs.