Argued September 1; affirmed October 15; rehearing· denied
December 31, 1929

WILL FROMME, Administrator, v. LANG & CO.

(281 Pac. 120)

For appellant there was a brief over the names of
*Messrs. Wilbur, Beckett, Howell & Oppenheimer,* and
*Messrs. Dey, Hampson & Nelson* and *George L. Buland*
with an oral argument by *Mr. E. K. Oppenheimer.*

For respondent there was a brief over the name of *Messrs. Lord & Moulton* with oral arguments by *Mr. Arthur I. Moulton* and *Mr. Gunther F. Krause.*

RAND, J. Plaintiff's intestate, an employe of defendant, while entering upon a freight elevator used by defendant in the operation of its plant and during the course of his employment, sustained injuries causing his death. Plaintiff, as the personal representative of decedents, brought this action under the employers' liability act for the benefit of decedent's mother, who resides in Germany, to recover damages for his death. The trial resulted in a verdict and judgment for defendant. Plaintiff moved to set aside the verdict and judgment and for a new trial. The motion was allowed and defendant has appealed from the order sustaining the motion.

Among other things, the employers' liability act requires employers to use every device, care and precaution which it is practicable to use for the protection and safety of their employes, which requirement is limited only by the necessity for preserving the efficiency of the machine or other apparatus and without regard to the additional cost of such safety appliance or device. The complaint charged as one of the acts of negligence causing the death of decedent defendant's failure to equip the elevator with a device that would stop the elevator and automatically lock it upon its reaching the different floors of the building where it was intended to be used and keep it and the gate protecting its exit upon that floor stationary while being used. It alleged that such a device was practicable and could have been used for that purpose without affecting or limiting the efficiency of the elevator. It also alleged that the elevator was operated by electric power and was moved from floor to floor by a

cable operated by hand and that the elevator shaft had gates upon the different floors which automatically raised and lowered as the elevator was raised or lowered above or below such floors, and that, by reason of defendant's failure to equip said elevator with said device, decedent sustained the injuries which caused his death. These allegations were denied by the answer and, upon the trial, plaintiff offered evidence tending to show that at the time of decedent's death the elevator was being raised by some person on the floor above and that when it reached the floor where decedent was the gates raised without stopping the elevator and decedent attempted to get on to the elevator and was caught by the gate as it descended throwing him partly upon and partly on the side of the elevator, crushing him and causing him to fall into the elevator shaft from which injuries he died within a short time thereafter. Plaintiff also offered evidence tending to show that there is a device which could have been used that would have automatically locked the elevator when it reached the floor where decedent was and would have permitted him to get on to the elevator while stationary, which, if used, would have prevented the gates from descending until the elevator had been released and would have prevented the injuries complained of.

To overcome the effect of this evidence, defendant called as a witness the service manager of the Otis Elevator company, who testified that he was familiar with defendant's elevator and with the other elevators generally in use in the city of Portland and, over the objection and exception of plaintiff, the following testimony was given by him:

"Q. Tell this jury the number of automatic elevators, freight elevators, of a similar type of Lang & Company's that are in use in the city of Portland.

"A. There are approximately, oh, 175 to 200 such automatic elevator gates used in Portland.

"Q. Mr. Higley, how many of the type where the elevator can't move as long as the door is open, or the gate is open—freight elevators?

"A. About 4 or 5."

The admission of this testimony was assigned by plaintiff in his motion as one of the grounds for setting aside the verdict and judgment and for the granting of a new trial and was the particular ground assigned by the court for granting a new trial. Defendant contends that this testimony was admissible and if not admissible its introduction was not prejudicial to plaintiff.

■ We think that this contention can not be sustained. But for the requirements of the employers' liability act, evidence of this character would be admissible because tending to prove reasonable care upon the part of the defendant but it was not admissible to prove a compliance with the requirements of the employers' liability act. This act requires more than the exercise of ordinary care upon the part of employers while engaged in the operation of dangerous machinery and appliances. Proof of the manner in which a thing is generally done by men engaged in the same occupation and under like circumstances is, when a thing is shown to have been done in that manner, some evidence that the thing was done reasonably and in the exercise of ordinary care, because, in the transaction of their own business, men generally use ordinary care to protect themselves and their employes from injury. Negligence is the exception and not the general rule of human conduct. Hence, the law presumes in the absence of proof to the contrary that a thing is not done negligently and that an act done in

the usual and ordinary manner by people generally is done reasonably and with ordinary care. This statute, however, imposes a higher standard of care than that imposed under the rules of the common law. It requires that in the operation of dangerous machinery the employer shall use "every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance(s) and devices."

The question involved under the pleadings in the instant case was: Was there a device, not used by defendant, which it was practicable to use for the protection of defendant's employes and which, if used, would not have limited the efficiency of defendant's elevator and if used would have protected the decedent from the injuries which caused his death? Upon that question proof that the device was not in general use did not meet the point involved and when admitted had no probative value whatever. It was entirely beside the point and could afford no excuse or justification for defendant's failure to use the device if there was one which would have accomplished that result. For these reasons, and in accordance with the ruling in *Shields v. Grace & Co.*, 91 Or. 187 (179 P. 265), and in *Poole v. Tilford*, 99 Or. 585 (195 P. 1114), we hold that this evidence was not admissible under the pleadings and proof offered in the instant case.

We think that the contention of the defendant that the admission of this incompetent testimony was not prejudicial to the rights of plaintiff should not be sustained. We think it is settled law in this state

that where it manifestly appears upon the face of the record that error was committed in the trial of a cause the court will not presume that the error was harmless but will presume it to have been prejudicial unless the court can affirmatively say, from an inspection of the record before it, that the error was removed or rendered harmless or was one which, in its very nature, could not have been prejudicial to the rights of the party complaining: *Dubois v. Perkins*, 21 Or. 189; *Nickum v. Gaston*, 24 Or. 380 (33 P. 671); *Pitts v. Crane*, 114 Or. 593 (236 P. 475).

■ It is a familiar and well recognized trait of human nature to accept as proper the conduct and actions of others if they conform to the standard ordinarily and generally followed by the great mass of the people. When the jury which tried this case was informed that the safety device for which the plaintiff was contending and with which defendant's elevator was not equipped was one which was used only by four or five out of the 175 to 200 owners of freight elevators in the city of Portland, it was a natural inference for them to draw from that fact that such a device was unnecessary and impracticable. Such an inference, if drawn at all, must be drawn only from facts properly in the record and not from testimony improperly admitted. The learned trial court was of the opinion that the introduction of the testimony to which we have referred was prejudicial and prevented the plaintiff from obtaining a fair and impartial trial and we can not affirmatively say that it did not have that effect. For these reasons, the order granting a new trial must be affirmed.

AFFIRMED.   REHEARING DENIED.

BROWN, J., did not participate in this opinion.