Argued December 12, reversed and remanded January 16, 1952

# BALDASSARRE *v.* WEST OREGON LUMBER CO.
### 239 P. 2d 839

*Nels Peterson* argued the cause for appellant. On the briefs were Green, Landye & Peterson and Frank H. Pozzi, of Portland.

*Cleveland C. Cory,* of Portland, argued the cause for respondent. With him on the brief were Hart, Spencer, McCulloch, Rockwood and Davies, Hugh L. Biggs and George H. Fraser, of Portland.

Before HAY, Acting Chief Justice, and ROSSMAN, LUSK, LATOURETTE and WARNER, Justices.

## LUSK, J.

While working as an employee of defendant, West Oregon Lumber Co., at its sawmill in Portland, Oregon, the plaintiff was injured as the result of a piece of lumber striking his left foot. He sued the defendant for damages, claiming that the injury was caused by the defendant's negligence. The jury returned a verdict for the defendant, and from the consequent judgment the plaintiff has prosecuted this appeal.

The accident occurred on October 13, 1947. Plaintiff's job was to pull lumber from the "sizer chain" and pile it on the "jitney block." As explained in the testimony, the sizer chain is a sorting table back of the planer, designed to aid in the sorting of lumber of various grades and lengths after it has been surfaced.

The table is equipped with moving chains and along either side with rollers a little below the level of the chains. The lumber comes from the planer, and, as it is carried along on the chains, the members of the crew, standing on raised platforms or walkways on either side of the table, "pull" the pieces and pile them on the floor, about 25 inches below the walkways. In order to remove a piece from the chain the workman pulls it toward him far enough to enable him to press down on it so that it will come in contact with the roller which carries it off the chain. As it comes off the roller the workman catches it with his hands and then places it on the pile on the jitney block.

On the day of the accident the plaintiff was working on what is referred to as the "short side" of the chain, that is to say, his duty was to pull the shorter lengths of lumber, in this instance largely 16 foot lengths. The plaintiff testified that the accident occurred when a fellow workman, Patterson, who was on the opposite side of the chain from him, pushed toward him 4 pieces of lumber, 1 x 8 and about 20 feet long. Patterson, as the plaintiff put it, "pulled too fast" (apparently meaning "pushed too fast"), as a result of which the plaintiff's hold on the lumber was loosed and it fell on his foot.

This conduct of a fellow servant is charged as negligence.

Other charges of negligence are the following: Failing to provide plaintiff with a reasonably safe place in which to work, in that defendant could have provided a walkway of sufficient width to provide a safe working space and could have installed a 2 x 2 inch guard rail or similar guard rail to protect the foot of the plaintiff; and failing, in the particulars just specified, to use every device, care and precaution practicable to be used

which would not have impaired the efficiency of the operation.

All these alleged failures of duty are charged both as violations of the Employers' Liability Act (§§ 102-1601 to 102-1606, O.C.L.A.) and as common law negligence; and, in addition, the alleged omissions to provide a walkway of sufficient width and a guard rail to protect the plaintiff's feet are charged to be in violation of certain provisions of the Safety Code for Sawmill, Woodworking and Allied Industries of Oregon, effective January 2, 1946, adopted and promulgated by the State Industrial Accident Commission of this state pursuant to authority vested in it by §§ 102-1228 to 102-1246, O.C.L.A.

■ The interpretation and application to the case of the following provisions of the safety code are involved in the first assignment of error:

"2.14 (a) *Walkways* on either side of green chains or sorting tables shall be of sufficient width to provide safe working space."

"5.4 (b) A two by two (2 x 2) inch guard rail should be installed at the extreme outer edge of these walkways to protect the feet of workers pulling lumber from these chains."

The walkway on which plaintiff was working was 40 inches in width, and there is some evidence that for the safety of the workmen it should have been wider. It is conceded that there was no guard rail at the extreme outer edge (that is the edge farthest from the sizer chain) of the walkway. Preliminarily it should be said that the provisions of the safety code apply to the defendant in the operation of its sawmill, and, properly interpreted, have the force and effect of law. *Varley v. Consolidated Timber Co.*, 172 Or. 157, 165, 139 P. 2d 584. The questions now to be considered arise

upon exceptions taken by plaintiff's counsel to two instructions requested by defendant and given by the court, which related to the alleged negligence of the defendant in failing to provide a walkway of sufficient width and a toe guard. The instruction as to the walkway is, in substance, that the defendant was under no duty to maintain a wider walkway than that in use at the time of the accident unless (1) the precise work in which plaintiff was engaged involved risk and danger; (2) it would have been practicable to maintain a wider walkway; (3) a wider walkway would not have impaired the efficiency of the work; and (4) if maintained it would have prevented the accident. As a part of the same instruction the court then charged the jury in the alternative that, even though they should find that the work did not involve risk and danger, nevertheless the duty to maintain a wider walkway would exist if ''an ordinarily careful and prudent sawmill operator under the same or similar circumstances would have maintained a wider walkway'', and if, had he done so, the accident would not have occurred.

■■ The point of counsel's exception and the argument in support of it is that, while the instruction submits the issues of violation of the Employers' Liability Act and common law negligence, it omits the issue of a violation of the safety code. The objection would be valid if § 2.14 (a) of the code prescribed something higher than the common law duty of the employer to provide its employees with a reasonably safe place to work. We think it is clear that it does not. The section reads that walkways ''shall be of sufficient width to provide safe working space.'' We know of no other standard by which to determine what that width should be in the place where the work was going on than the standard of ordinary care. The court had previously

instructed the jury that violation of the provision in question would constitute negligence *per se*. But it was the duty of the court on request to interpret the provision. The rule given to the jury, which adopted the standard of "an ordinarily careful and prudent sawmill operator", was correct; none the less so, because the safety code provision, properly interpreted, is only a codification of the common law rule with respect to the particular duty of an employer which it embraces.

What has just been said has, of course, no reference to the Employers' Liability Act and the duty of an employer under it. If the jury found that the work involved "a risk or danger to the employees," they would apply a higher standard of care, and the jury were so instructed. *Fromme v. Lang & Co.*, 131 Or. 501, 281 P. 120.

The other instruction complained of under this assignment of error is substantially in the language of the instruction just considered with the exception that it relates to the alleged negligence of the defendant in failing to provide a toe guard. The point of the objection is that such failure is a violation of the safety code and negligence *per se*.

■ The regulation reads, "a 2 x 2 inch guard rail *should* be installed at the extreme outer edge of these walkways", etc. (Italics added.) The question turns on the effect to be given to the word "should." One definition of that word is "Obligation in various degrees, usually milder than *ought*; as you *should* be obedient." Funk & Wagnall's New Standard Dictionary. As a reference to the cases cited in 39 Words and Phrases (Perm. ed.) 234 et seq., and Pocket Part 48, will illustrate, "should" frequently implies a command, a duty or an obligation. But this is not always so. See *Nashville Ry. & Light Co. v. Lawson*, 144 Tenn. 78, 98,

229 S. W. 741, 746; *Godchaux v. Carpenter*, 19 Nev. 415, 421, 14 P. 140, 142. Here, as in so many other instances, the meaning of the word and the intention to be ascribed to those who used it must be determined by the context. The provision in which it is found is one of several score safety regulations for the sawmill industry, most of which use "shall", as, for example, 5.14 (a), which immediately precedes the provision in question and reads, "The vertical face of all green chains and sorting tables shall be boarded up to a height not less than eighteen (18) inches from the floor of the walkway." The occasional use of "should" instead of "shall" does not appear to be inadvertent but deliberate. Indeed, the entire code bears on its face evidence that it was prepared with great care and scrupulous regard to the right choice of language. We can only conclude that in those instances where departure is made from the mandatory "shall" to the somewhat ambiguous "should", the purpose was to express a different meaning—to convey the notion that the particular precaution was desirable and recommended, but not required. See, 3 Sutherland, Statutory Construction (3d ed.), 116, § 5821. In this view the regulation was not legally binding on the defendant and the instruction complained of was free from error.

■ It follows, also, that reversible error was not committed by the court in permitting the witness, James R. Grady, to testify to the distinction in meaning between "shall" and "should" in the safety code. Admission of this testimony over objection is the subject of the third assignment of error. Mr. Grady was an employee of the State Industrial Accident Commission in charge of writing safety codes. His testimony is sought to be defended as evidence of administrative interpretation. We need not decide the question, for, even though the

evidence was erroneously admitted, it did no harm to the plaintiff, since the witness's interpretation of the words accords with our own and amounts to no more than a declaration of law which the court was bound to, and did, apply in its instructions.

The second assignment of error is based upon two rulings of the trial court which admitted evidence over the plaintiff's objections. A somewhat extended statement becomes necessary in order to show how the questions arise.

Plaintiff called as a witness Claude Hale, a former sawmill worker, who testified that he was secretary-treasurer of the Columbia River District Council of the International Wood Workers of America. This union had a contract with the defendant corporation. The witness testified that in his capacity as union representative he participated in safety discussions called by the State Industrial Accident Commission of Oregon, and that he was familiar with the safety practices and safety code relating to the sawmill industry of this state. He identified a copy of the code which was received in evidence. He was then asked whether, before the code was formulated, safety discussions were conducted by the State Industrial Accident Commission, and answered, "Many sessions." Whereupon counsel for the defendant objected on the ground that, while no harm was done by receiving the code in evidence, "any further discussion as to what led to it and *what the opinions of some of the members who attended that meeting,* are concerned, is immaterial." (Italics added.) The following then occurred:

"MR. PETERSON: The purpose of this is to show his qualifications as an expert. Now, counsel has required us to prove by expert testimony whether or not it is practicable to have a 2 x 2 or

toe guard rail, and I propose to qualify this witness as an expert.

"THE COURT: You can show his experience. Is it your intention to ask him to relate portions of the discussion?

"MR. PETERSON: No.

"THE COURT: Merely as a background for expressing an opinion?

"MR. PETERSON: That is correct.

"THE COURT: All right. You may proceed. Read the question."

■ After further evidence by the witness as to his qualifications to testify as an expert, he gave it as his opinion that the walkway on which plaintiff worked should have been wider than 40 inches and that a wider walkway would be safer and practicable and would not interfere with the efficiency of the operation, and further that it would have been practicable and would not have interfered with the efficiency of the operation to have equipped the walkway with a 2 x 2 or other toe guard. On this issue plaintiff had the burden of proof. *Camenzind v. Freeland Furniture Co.*, 89 Or. 158, 171, 174 P. 139.

■ The first ruling challenged by this assignment of error arose on the cross-examination of this witness. Counsel for defendant developed that Hale was a member of the grievance committee of the union; that as such he attempted to get for the union what a majority of them wanted; and that he recognized that some of the provisions of the safety code are recommendations while others are positive requirements; and that, in settling grievances relating to safety measures, "We do recognize people's opinions on things, but in the final analysis we recommend that the safety code regulations be observed." He was then asked: "Now, when you make a recommendation that any particular provision

of a safety code be followed, don't you have to determine whether that provision is an absolute requirement or whether it is merely a recommended device?" Counsel for plaintiff objected on the ground that the question called for a legal conclusion. The objection was overruled and the witness answered: "Our recommendation is that whether this code is mandatory, whether all of those articles are mandatory or not, it is our recommendation that they follow the provisions of it, even the recommendations."

The question was not vulnerable to the particular objection made by the plaintiff, for the witness was not asked to interpret the code provision but merely to explain his practice in handling grievances which have to do with safety precautions. The ruling, therefore, was not erroneous. Moreover, the answer which the witness gave could not possibly have prejudiced the plaintiff. We shall have occasion, however, to refer again to this testimony in connection with the claim of error now to be considered.

Merle Roley, an employee in the defendant's sawmill and a member of the union's safety committee of three, was a witness for the defendant. He testified that the committee's duties were to inspect the plant monthly, and, through negotiations with the employer, secure the adoption of safety measures. He was asked whether the committee had considered the advisability of toe guard rails along the outer edge of the walkways on the sizer chain. The question was objected to on the ground that it was incompetent and did not tend to prove or disprove any issue in the case under the Employers' Liability Act. On inquiry by the court as to the significance of the testimony, counsel for the defendant said, "The practicability of it," and the court overruled the objection. The witness made a non-

responsive answer, whereupon he was asked, "Did you have occasion to bring to the attention of the membership the issue of whether there should be guard rails along the walkway of the sorting tables or the green chain, the sizer chain?" Objection to this question on the same grounds as those previously stated was overruled, and, after several more questions along the same line, the witness answered that only about three of the men wanted the toe guard. The transcript then discloses the following:

"Q  Three of them wanted it?

"A  Well, there were so many of them—

"MR. PETERSON: Your Honor, I think I will have to object to that. Why 150 men, or a majority, we don't know how many to say, why they did it, I think that would be incompetent.

"(The objection was argued to the Court.)

"THE COURT: Oh, I think it is admissible. I will overrule the objection. You may proceed."

The court next sustained an objection to a question which called for the "arguments against it" (i.e., the toe guard), but the witness was permitted to answer the question, "What were the reasons that the men didn't want them?" The "reasons", however, as stated by the witness, appear to have been the same thing as the "arguments." In fact, the witness referred to "another argument" used by the men.

The assignment of error, while somewhat inartificially drafted, is nevertheless a substantial compliance with our rules and is sufficient to raise the question of the correctness of the court's rulings.

■■ We think the evidence objected to should have been excluded. The standard fixed by the Employers' Liability Act is that

"all owners, contractors or sub-contractors and other persons having charge of, or responsible for,

any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, without regard to the additional cost of suitable material or safety appliance and devices." § 102-1601, O.C.L.A.

Whether the defendant fell short of compliance with these requirements by failing to maintain a toe guard at the walkway is not to be determined by a Gallup poll of employees, nor by hearsay evidence of the reasons or arguments advanced by some of the employees in opposition to use of the device. As we have seen, counsel for the defendant objected when he anticipated (although apparently without good reason) that plaintiff was about to elicit evidence of a similar character from the witness Hale. The ground of this objection, that "the opinions of some of the members who attended that meeting" (that is, the safety discussion meeting of the State Industrial Accident Commission) were immaterial, was valid. It is equally valid when urged by the plaintiff, for the testimony now under consideration amounts to nothing more than evidence of the opinions and statements of persons who were not themselves witnesses, were not sworn, and not subject to cross-examination. Defendant argues in its brief that the evidence was relevant on the issue of violation of the Employers' Liability Act because it "tended to show that the use of such an alleged safety device as a toe guard rail was impracticable and that its installation would have impaired the efficiency of the work being done on the sizer chain. The view of the men actually working on the operation was material and relevant on this issue." The admission of opinion evi-

dence on that subject was no doubt well within the discretion of the trial judge. *United States Smelting Co. v. Parry,* 166 Fed. 407, 410 (8th Cir.); Annotation, 78 A.L.R. 755; *Hamann v. Milwaukee Bridge Co.,* 127 Wis. 550, 565, 106 N. W. 1081; 7 Ann. Cas. 458; 35 Am. Jur., Master and Servant, 937, § 512. But, to be competent, it must be the opinion of the witness himself, not of others.

■ Nor was this testimony admissible upon the meaning, effect or applicability of the safety code provision. These questions were for the court, not the jury, and neither the opinions, discussions or wishes of the employees, nor for that matter of the witness himself, had anything to do with them. The error went to a basic issue in the case, and we cannot say that it was not prejudicial. *Fromme v. Lang & Co.,* supra, 131 Or. 505.

Since the judgment must be reversed and a new trial ordered, we think it well to say that the question put to the witness Hale concerning the recommendations he made as to following the provisions of the safety code, was proper only as cross-examination with reference to his qualifications as an expert witness. For that purpose it was within the discretion of the trial court to permit the question to be answered.

Some of the remaining assignments of error will be noticed.

■ Assignment Number IV is based upon the court's refusal to give the following instruction requested by the plaintiff:

"It is not necessary for the plaintiff to prove that any of the devices which he claimed were not used in his complaint were in general use. It is only necessary for him to prove that such a device was practicable, and if used, would not have limited the efficiency of the operation."

The court included in its charge the second sentence, but not the first. In support of his claim that this was error, plaintiff cites *Fromme v. Lang & Co.*, supra, 131 Or. 505, which reversed a judgment for defendant because the court admitted evidence offered by the defendant that a certain safety device for elevators was not in general use in Portland. The ground of this decision was that, in view of the provisions of the Employers' Liability Act, which impose on the employer a higher duty than the duty to exercise ordinary care, the evidence was "entirely beside the point and could afford no excuse or justification for defendant's failure to use" a device such as the act requires, if there was one. In this case plaintiff, for the purpose of showing that a toe guard was practicable, introduced evidence of its use in another mill. This was competent evidence for that purpose. *Malloy v. Marshall-Wells Hardware Co.*, 90 Or. 303, 310, 173 P. 267, 175 P. 659, 176 P. 589. In a number of cases we have held that upon this issue it may be shown that after an accident a safeguard was installed and used, the failure to provide which was claimed by the plaintiff to be a violation of the Act. *Franklin v. Webber*, 93 Or. 151, 156, 182 P. 819, and cases there cited. Hence, the defendant's contention, that if error was committed in refusing to give the instruction in its entirety, it was error invited by the plaintiff, is groundless. The plaintiff did not introduce the question of whether toe guards were in general use, although it would have been perfectly proper for him to have shown that they were. That matter came into the case through the volunteered testimony of a witness for the defendant, who, when asked if he had an opinion as to whether a toe guard would be a practicable device, answered that he would not render an opinion but that he had been in dozens of mills and believed he had seen

hundreds, and "I have never, never, — nothing like that." This is the very character of evidence denounced in the Fromme case, and the answer should have been stricken on motion, but no motion to strike was made and it remained in the record. It would, therefore, have been entirely proper for the court, by way of caution, to give the instruction requested. Whether its refusal to do so was reversible error, we need not decide since the question is not likely to arise on another trial.

Much of the plaintiff's brief is devoted to alleged errors in the court's instructions relative to contributory negligence. At first the court charged the jury, in effect, that contributory negligence was a defense to the action if the Employers' Liability Act did not apply. This was erroneous because defendant was engaged in a hazardous occupation and had rejected the Workmen's Compensation Act. Hence, under § 102-1713, O.C.L.A., the defense of contributory negligence, other than in reduction of damages, was not available to it. *Parrott v. Hanson,* 180 Or. 620, 623, 175 P. 2d 169; *Camenzind v. Freeland Furniture Co.,* supra, 89 Or. 177.

But, after exceptions taken to the instructions and argument of counsel on the question of contributory negligence, the court corrected the error by further instructions which eliminated from the case contributory negligence as a defense and should have left no doubt in the jury's mind as to the applicable rule of law in this regard.

By Assignment of Error Number VIII the plaintiff challenges the following instruction given by the court:

"I instruct you that employments involving risk or danger, as that phrase is used in the Employers' Liability Act, are employments which are beset with

danger and which are inherently hazardous, or employments which under the circumstances or manner in which they are being executed are inherently dangerous and hazardous. Such employments are those which men commonly regard as dangerous and hazardous in that they involve greater risk and danger than that with which men in common and the public generally are confronted in the ordinary occupational pursuits."

The particular objection urged is to the second sentence of the instruction. Counsel's exception was not sufficiently specific to enable him to raise the question here. But, in view of a new trial, we should pass upon it. There is some support for the language of the second sentence in *Wells v. Nibler,* 189 Or. 593, 598, 221 P. 2d 583, 585, and in *Freeman v. Wentworth & Irwin, Inc.,* 139 Or. 1, 14, 7 P. 2d 796, 801. However, as we have before had occasion to observe, it is not always safe or desirable to include in an instruction to the jury language which may be appropriate in an opinion of an appellate court. The first sentence of the instruction contains a definition of "work involving a risk or danger", the substance of which has been approved in the following cases: *Williams v. Clemen's Forest Prod., Inc.,* 188 Or. 572, 589, 216 P. 2d 241, 217 P. 2d 252; *Barker v. Portland Traction Co.,* 180 Or. 586, 602, 173 P. 2d 288, 178 P. 2d 706; *Hoffman v. Broadway Hazelwood,* 139 Or. 519, 523, 10 P. 2d 349, 11 P. 2d 814, 83 A.L.R. 1008; *Bottig v. Polsky,* 101 Or. 530, 545, 201 P. 188; *O'Neill v. Odd Fellows Home,* 89 Or. 382, 390, 174 P. 148. It is an adequate definition, so far at least as it is possible to define such terms satisfactorily, and shed light upon their meaning. The inclusion in the instruction of the language concerning employments which "men commonly regard as dangerous and hazardous", etc., does not seem to us to be well calculated

to aid a jury in determining the question they must decide, and, on the other hand, it introduces an element which may be misleading. We are of the opinion, therefore, that on another trial the court, in instructing on this subject, should omit the sentence objected to. Further, it would be more accurate to speak of "work", which is the language of the statute, rather than "employments", involving a risk or danger.

The other assignments of error are devoid of merit and do not call for discussion.

In view of what has been said the judgment must be reversed and the cause remanded for further proceedings in conformity with this opinion.