Argued October 14, affirmed November 12, 1953

# ARNOLD *v.* GARDINER HILL TIMBER COMPANY

**263 P. 2d 403**

*Berkeley Lent,* of Portland, argued the cause for appellant. On the brief were Nels Peterson, Frank H. Pozzi, and John W. Purvis, of Portland.

*Paul E. Geddes,* of Roseburg, argued the cause and filed a brief for respondent.

Before LATOURETTE, Chief Justice, and WARNER, TOOZE and PERRY, Justices.

TOOZE, J.

This is an action for damages for personal injuries allegedly caused by the negligent operation of a saw-

mill, brought by Ishum Arnold, as plaintiff, against Gardiner Hill Timber Company, a corporation, as defendant. The case was tried to a jury, resulting in a verdict in favor of defendant. Judgment was entered accordingly, from which plaintiff appeals.

Plaintiff prosecuted his action under two theories of recovery; viz.: (1) common-law negligence, and (2) violation of the Employers' Liability Act (§§ 102-1601 to 102-1606, OCLA). The trial court submitted both theories to the jury.

Plaintiff was injured on or about July 19, 1951, while working for defendant at its sawmill near Gardiner, Oregon.

The sawmill of defendant was a small one known as a double circular mill. It was equipped with double head saws installed along the side of a carriage track which was some 50 feet in length. The front of the saws is designated as the edge where the log starts when being cut, and the back is that edge where the lumber issues. Extending from the back side of the saws for some distance was a transfer chain, sometimes called a conveyor chain, which ran parallel with and next to the carriage tracks and about two and one-half feet higher than the tracks. The lumber from the headsaws came out on this transfer chain which on its top side ran away from the saws and on the underside ran toward the saws. Plaintiff was employed as an off-bearer working on this transfer chain.

The headsaws were installed vertically, parallel, and outside the tracks, with the one saw almost directly above the other. The lower one was set partially into the flooring with a small opening in the floor to accommodate the saw and to permit some sawdust to fall through the hole. Between the tracks and on the

front side of the saw was an opening in the flooring about three feet from the saws themselves. It was about two feet square with a drum inside the opening, and was for the purpose of putting sawdust into. The dust was then carried away by a conveyor chain below it, which ran at right angles to the tracks.

The underside of the saw, below the floor, was guarded from the transfer chain and other conveyors by timbers, boards, or "stoppers" which made it impossible for any scrap material or other debris to be carried by the transfer chain or other conveyors into the saw from the underside.

At the time of the injury of plaintiff, the saws had been reduced to idling speed, and no cutting was being done. The plaintiff and others were cleaning around the carriage tracks. The plaintiff was standing between the tracks on the back side and about four feet from the saws, facing them. He was shovelling sawdust from between the tracks and throwing it with his shovel past the face of the saw toward the sawdust hole which was located in front of the saws a distance of about three feet. He testified that he saw a glimpse of something and was hit, but did not attempt to identify what hit him until he looked around after the accident. He then believed it to have been a piece of slab. Neither he nor anyone else specifically saw anything thrown from the saws.

The aluminum shovel which he was using was introduced as defendant's exhibit 2. It was cut and showed evidence of sawteeth marks in the metal scoop. Several teeth of the saws themselves were broken. A. A. St. Onge, an independent sawmill designer, and Lester Johnson, mill foreman, in effect testified that it would take metal against metal to break the teeth. It is

presumed, therefore, that the shovel in some manner made contact with the saws. It was found some little distance from the plaintiff after the accident occurred.

The defendant's answer admitted and the evidence on the trial proved that the work in which plaintiff was engaged involved risk and danger within the meaning of the Employers' Liability Act, thereby making provisions of that law applicable to this case. Plaintiff charged defendant with negligence in the following respects:

"1. In ordering this plaintiff to clean around said saw while said saw was not disengaged from its power.

"2. In failing to warn this plaintiff of the dangers attendant on said work.

"3. In failing to place guards around said saw in order to prevent pieces of wood from being caught therein.

"4. In failing to furnish this plaintiff with a face shield.

"5. In failing to have the area immediately surrounding said saw and particularly the space between the deck and the transfer chain boarded up.

"6. In failing to have a stopper under said transfer chain to prevent pieces of scrap lumber and debris from being carried back from the chain to said saw.

"7. In failing to provide this plaintiff with a reasonable [sic] safe place in which to work, but instead under the circumstances hereinbefore set forth.

"8. In failing to use every device, care and precaution practicable to be used which would not have impaired the efficiency of said operation, in that defendant could have disengaged said saw from its power before requiring this plaintiff to clean the debris and scrap lumber under and around

said saw and transfer chain, could have warned said plaintiff of the dangers attendant upon said work, could have placed guards around said saw, thereby preventing pieces of wood from being caught therein and thrown therefrom, could have furnished this plaintiff with a face shield, could have had the area immediately surrounding said saw, and particularly the space from the deck to the transfer chain, boarded up, could have had a stopper under said transfer chain to prevent pieces of scrap lumber and debris from being carried back from the chain to said saw, and could have provided this plaintiff with a reasonably safe place in which to work in that defendant could have provided said safe guards [sic] as heretofore alleged.''

By its answer defendant denied the alleged negligence charged against it and affirmatively alleged that plaintiff's injuries were caused solely by his own negligence in certain respects as specifically charged. Plaintiff denied this negligence in his reply.

During the course of the trial and as a part of plaintiff's case in chief, questions arose concerning certain provisions of the Safety Code for Sawmill, Woodworking and Allied Industries of Oregon, effective January 2, 1946, and as adopted and promulgated by the State Industrial Accident Commission of this state, pursuant to the authority vested in it by §§ 102-1228 to 102-1246, OCLA.

Over defendant's objections, the court admitted into evidence three of such provisions reading as follows:

"1.6 'Shall' and 'Must' are used to indicate the provisions which, are mandatory.''

"6.38 c. A clutch, friction or other effective method of disengaging the head rig saws from the power unit shall be installed on all head rigs where the power unit is not directly controlled by the

sawyer. The saws shall be disengaged from the source of power while repairs or changes are made."

"7.17 c. Brackets or edging supports shall be installed between the saw and the side of the husk."

■ At the outset, it should be stated that the provisions of the Safety Code apply to the defendant in the operation of its sawmill. By statute it is made the duty of the State Industrial Accident Commission to make, establish, promulgate, and enforce all necessary and reasonable rules, regulations, and provisions to render safe the place of employment, and to protect the life and safety of every employe. When such rules and regulations are duly established and promulgated, they have all the force and effect of law, and employers are charged with the duty of obeying them when they apply to their particular operation. §§ 102-1228, 102-1229, 102-1231, and 102-1232, OCLA. Section 102-1232, OCLA, specifically provides in part that the Commission shall have the power:

"(1) To declare and prescribe what safety devices, safeguards or other means or methods of protection are well adapted to render the employees of every employment and place of employment safe as required by law or lawful order."

■ A violation of a duly established mandatory rule and regulation of the Safety Code constitutes negligence per se. Such a violation may be charged as negligence under the Employers' Liability Act, and as common-law negligence. *Baldassarre v. West Oregon Lbr. Co.*, 193 Or 556, 561, 239 P2d 839; *Varley v. Consolidated Timber Co.*, 172 Or 157, 165, 139 P2d 584.

Two of plaintiff's assignments of error on this appeal relate to the foregoing provisions of the Safety Code.

Plaintiff's first assignment of error is directed to certain testimony admitted over his objection, and his third assignment of error is directed to the refusal of the court to give a certain instruction requested by him. We shall first discuss the third assignment of error, inasmuch as what we say in that connection will largely determine the validity of plaintiff's claim under his first assignment.

■ Plaintiff assigns as error the refusal of the court to give the following requested instruction:

"You are instructed that on July 19, 1951, the Safety Code for Sawmill, Woodwork [sic] and Allied Industries of Oregon was in effect and had the force and effect of law.

"Violation of this Safety Code by defendant in respect to defendant providing on the saw in question brackets or edging supports between the saw and the side of the husk as a guard would constitute negligence per se, i.e., negligence in and of itself, since such provision is mandatory upon an employer."

In the first place, the requested instruction itself is misleading, even if an instruction upon that provision of the Safety Code had been proper under the evidence. The request seems to assume a violation of the Safety Code by defendant in the respects mentioned. It was not a proper instruction in any case.

Next, there is no evidence in the record that brackets or edging supports between the saw and the side of the husk were not installed as required by the Safety Code. To the contrary, two witnesses for defendant testified that they were installed and in use at the time of the accident. Mr. St. Onge was called by plaintiff as an expert witness, and he was the only witness plaintiff produced who had anything to say

about these brackets or edging supports. St. Onge's testimony was based upon a small photograph handed to him for inspection. He explained the purpose for the installation of brackets or edging supports, but he did not testify that they had not been installed or were not in use in this particular operation. For a total failure of the evidence to support plaintiff's claim regarding a violation of the Safety Code in the respects under discussion, the court properly refused to give the requested instruction, or any instruction upon that provision of the Safety Code.

Moreover, under the evidence in this case, the failure to have installed such brackets or edging supports, had there been such failure, could not possibly have been a proximate cause of plaintiff's injuries.

■ Furthermore, that provision of the Safety Code was not within the issues of the case as framed by the pleadings. If one relies upon a violation of a provision of the Safety Code as an act of negligence, he must plead the facts necessary to bring the case under such provision. One can recover only upon the acts charged. An examination of the acts of negligence charged, supra, reveals no allegation of fact which even remotely suggests a violation of the Safety Code in the respects under discussion. *Valdin v. Holteen,* 199 Or 134, 260 P2d 504, 517; *Nichols v. Union Pacific R. R. Co.,* 196 Or 488, 503, 250 P2d 379.

■ Plaintiff's first assignment of error refers to certain testimony given by Loren Herring, a witness called by defendant. The witness was asked the following question:

"Q. To your knowledge, had this mill been inspected by the inspectors of the Industrial Accident—of the State Industrial Accident Commission for safety?"

An objection was made by plaintiff on the ground that the question was irrelevant. Thereupon, the following discussion occurred between court and counsel:

"COURT: What do you claim?

"MR. GEDDES: I claim, Your Honor, this: The plaintiff has charged a violation of the safety code and the law requires the State Industrial Accident Commission to make inspections to determine whether or not the thing is in the condition required by the regulations. I want to know if it has been done.

"MR. POZZI: We have no objection if he produces the inspector who made the inspection, but to take the word of this witness—

"COURT: He may answer the question.

"MR. POZZI: Is the Court overruling the objection?

"COURT: Yes."

The question was then read by the reporter, and the following testimony was given:

"Q. Before the accident?
"A. Do I have to answer that 'yes or no'?

"Q. If you know.
"A. Well, all I could say to that question is to my knowledge the mill operated about a year under the State Industrial Accident Commission.

"Q. I see. Was it shut down by the Commission?
"A. Not to my knowledge.

"Q. You would know, wouldn't you? You would have known.
"A. You mean during the time I was there?

"Q. Or any time that you know of it being run under the Commission.
"A. No, I am positive it was never shut down.

"Q. But you don't know whether the inspector was actually there or not?

"A. No.

"MR. POZZI: I move to strike that testimony.

"COURT: What difference would it make?

"MR. POZZI: It makes this difference, Your Honor, that counsel knows it isn't proper evidence and he gets it in in a round-about method before the jury. This man wasn't at the mill; he doesn't know anything about that; there may have been changes.

"COURT: Let the answer stand."

In considering plaintiff's objection to this testimony, we must keep in mind that he, as a part of his case in chief, sought to make an issue of the provisions of the Safety Code, although the allegations of his complaint, as well as the evidence he offered, did not make them in any way applicable. The testimony offered by the witness Herring was an indirect attempt to establish the fact that the Safety Code had not been violated. Inasmuch as there was no evidence in the case at that time that it had been violated, there was nothing to rebut, and the offered testimony was immaterial. That also would have been true had the inspector for the Industrial Accident Commission been produced to testify concerning an inspection, although plaintiff's attorney stated that he would have no objection to such inspector so testifying. It is manifest that the testimony of Herring being irrelevant and immaterial, its admission constituted error, but under the record in this case, we are satisfied that it was neither prejudicial nor reversible error. Furthermore, it was error which, in a sense, plaintiff invited.

■ Plaintiff also assigns as error the giving of the following instruction to the jury:

"Now, this case is, to some extent, based on negligence and the term 'negligence means the failure to do an act required by statute or the doing of an act which is prohibited by the statute or the failure to exercise that degree of care and forethought which an ordinarily careful and prudent person would exercise under the circumstances and contributary negligence is negligence on the part of a plaintiff proximately contributing to his own injury. Whether or not there was any negligence in this case or any contributory negligence are entirely questions of fact for your determination under the evidence and under these instructions."

Plaintiff took the following exception to that instruction:

"MR. POZZI: May it please the Court, the plaintiff excepts to the Court's definition of negligence inasmuch as the Court did not cover the affirmative of the definition of negligence; that is to say, doing that which a reasonably prudent person would not have done under the same or similar circumstances. * * *

"COURT: I don't consider it prejudicial. I told them it was only an example, and there was nothing to prejudice them whatsoever. You are entitled to take your exception."

There is no merit in this assignment of error. Where the alleged act of negligence does not consist of a violation of a fixed rule of law, ordinary negligence is properly defined as "the failure to exercise that degree of care and forethought which an ordinarily careful and prudent person would exercise under the circumstances". This definition covers both the negative and affirmative; it is all-inclusive. There are several definitions of ordinary negligence, all of which

mean the same thing. Which definition the trial judge adopts is a matter of his own discreton, provided he adopts a correct statement.

No reversible error being found in the record, the judgment is affirmed.