**OREGON TRANSFER CO., a corporation, Plaintiff,**

v.

**TYEE CONSTRUCTION COMPANY, a corporation, Defendant.**

**Civ. No. 60–114.**

United States District Court
D. Oregon.

Nov. 21, 1960.

648

Black, Kendall & Tremaine; David J. Krieger, Portland, Or., for plaintiff.

Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for defendants.

C. E. Luckey, U. S. Atty., David Robinson, Jr., Asst. U. S. Atty., Portland, Or., for third party defendant.

KILKENNY, District Judge.

Action by plaintiff against the defendant to recover the value of certain services performed and materials furnished by plaintiff to defendant. Defendant counterclaims for $7,250, the amount it expended for the replacement of a bridge, and the further sum of $1,645.81, for additional expenses.

On March 27, 1959, defendants entered into a written contract with the United States of America for the construction of a certain electric power transmission line in Lincoln County, Oregon. On April 20, 1959, plaintiff and defendant entered into a contract wherein plaintiff agreed to perform a portion of the work which defendant had agreed to do under its contract with the United States. The work to be done by plaintiff included the loading, transportation and delivery at tower sites of certain footing and tower steel and conductors required by defendant in the performance of its main contract. The services rendered and materials furnished by plaintiff to defendant have an agreed value of $10,495. While plaintiff was transporting a heavy load of such materials for defendant under such contract, a wooden bridge, over which plaintiff's loaded truck was passing, collapsed and was destroyed. The truck, unloaded, had a gross weight of 15,060 pounds and the materials loaded on said truck at said time weighed 28,706 pounds. The maximum gross weight of the load and the vehicle which was permissible under the certificate issued by the Public Utilities Commissioner of the state of Oregon was 42,000 pounds. The United States had an easement to use the bridge which collapsed. Said bridge was the property of third persons who are not parties to this action. The plaintiff and defendant had a right to the use of said bridge under said contracts.

Subsequent to the collapse of said bridge, the United States demanded that defendant replace the bridge so destroyed. Thereupon, the defendant demanded that plaintiff replace said bridge. Plaintiff refused such demand. The United States refused to make final payment under its agreement with defendant unless and until defendant replaced the bridge or furnished suitable access in lieu thereof. Pursuant to such demand, defendant constructed a new bridge at the old site during the months of October and November in 1959, at a cost to defendant alleged to be $7,250.00. Plaintiff claims further damage in the sum of $1,645.81 for alleged additional expense in providing alternate access to the location of the work in progress.

Defendant contends that plaintiff is under an obligation to indemnify defendant against said expenses, both at common law and under the specific provisions of the contract between the parties. The contract provides, among other things:

Article III. "The subcontractor agrees to be bound with the contractor by all of the terms of the contract and to assume toward him all the obligations and responsibility that he by those documents assumes toward the owner and to indemnify

and save harmless the said contractor from any and all loss, costs, damage or liability, due to the failure of the subcontractor to fully and faithfully keep and perform every obligation of the contractor to the owner in connection with the work hereunder undertaken by the subcontractor."

Article X. "* * * The subcontractor assumes all liability for injuries to persons or damage to property as a result of the performance of his contract, and shall indemnify the contractor against any loss or liability by reason of such injury or damage."

Plaintiff claims it is not liable under either theory and contends that both the United States and the defendant were contractually obligated to provide the plaintiff with routes of access to the tower sites; that plaintiff was an invitee of the United States and defendant in using the bridge and that the United States and defendant were negligent, (a) in failing to make any adequate, proper, usual or any inspection of the bridge; (b) in failing to warn plaintiff of the defective condition of the bridge; and (c) in advising plaintiff the bridge could safely be used for the transportation of materials, and that by reason of such alleged negligence, plaintiff is not contractually bound to indemnify the defendant.

The contract between the defendant and the United States (Bonneville Power Administration) provided, among other things:

"The contractor shall maintain all roads used by him and upon completion of the job shall leave them in as good a condition as when first used by him."

■ A bridge on a road is part of the road itself and this is without regard to the bridge's length or cost. People ex rel. Putnam v. Commissioners of Buf-

falo County, 4 Neb. 150, 158; Boshears v. Foster, 154 Tenn. 494, 290 S.W. 387, 389; Fischer v. Shasta County, 46 Cal.2d 771, 299 P.2d 222. A bridge is nothing more than that part of a road which crosses a stream. Denton v. Pulaski County, 170 Ky. 33, 185 S.W. 481; Read v. City of Camden, 54 N.J.L. 347, 373, 24 A. 549, 550.

■ This contract further provides:

"Cleaning up shall include * *, and (3) the full restoration of all property which was damaged during the prosecution of the work."

Plaintiff argues that under the terms of the contract the government was required to provide all right of way and there being such a requirement, the government was under a duty at all times to keep the roads and bridges in a usable condition for defendant. The argument is unsound for two reasons: (1) the specific provisions of the contract above mentioned clearly require the defendant to repair all damaged property and replace that destroyed, and (2) the "right of way" on which plaintiff relies is specifically defined in the contract and clearly means the area on which the road may be built, rather than the road or bridge itself. It is evident that defendant was under a direct obligation to maintain all bridges used by it and to leave them in as good condition as they were when first used. The government was within its legal rights in demanding of defendant that it replace the destroyed bridge.

■ The evidence establishes that plaintiff had been using another roadway which did not require the use of this bridge until some two or three days before the collapse. The surface of the other road became so muddy, due to incessant rainfall, that an alternate route to the construction sites had to be selected. Some two or three days before the collapse a representative of the Bonneville Power Administration advised the driver of the plaintiff's vehicle of the existence of the alternative roadway

in which the bridge was located. These parties made a casual examination of the bridge and concluded that it would safely carry the load then on the truck. The load on the truck at that time weighed approximately 15,000 pounds. Between that time and the time of the collapse, at least two other loads were hauled across the bridge, one of approximately 16,000 pounds and another of approximately 17,000 pounds. The load which caused the collapse was approximately 5½ tons heavier than any of the previous loads. The gross weight of the truck and load at the time of the collapse of the bridge was 43,766 pounds. This was almost a ton in excess of the permissible weight authorized by said Public Utilities Commissioner. Under Oregon law, the Public Utilities Commissioner is authorized and empowered to make rules and regulations with reference to the load capacity of such vehicles.[1] ORS 767.445, 767.450. To overload a motor vehicle is a crime punishable by fine and imprisonment. ORS 767.990. The violation of a rule or regulation issued by proper public authority is negligence per se. Arnold v. Gardiner Hill Timber Co., 199 Or. 517, 263 P.2d 403; Baldassarre v. West Oregon Lumber Co., 193 Or. 556, 561, 239 P.2d 839. I can see no reason why this rule should not be invoked in the present case. The load limitation is clearly for the protection of roads, including bridges.

■■■ It is argued that the witness Miller contradicted the weight as shown by the weight ticket and said that in truth and in fact some of the components listed on the weight ticket were not actually on the truck. I prefer to rely on the written record and hold that such record overcomes Miller's testimony. Likewise, I hold that plaintiff was guilty of common law negligence in placing an additional 5½ tons of material on such vehicle and attempting to cross such bridge without making another inspec-

tion. The pictures in evidence would indicate that such bridge had been in existence for a great many years. Plaintiff could well have anticipated that some of the support timbers might have been weakened through the ravages of age. Certainly, plaintiff's employee was not exercising due care when he attempted to cross such a mountain bridge, without inspection, with a combined load of approximately 21 tons. Although I do not believe it is absolutely necessary to a decision in this case, I hold that the collapse of the bridge was caused solely and only by the lack of due care and negligence on the part of the plaintiff and not through any negligence of the defendant or the United States. I mention this in connection with the general rule that an indemnity agreement is not construed to cover losses to the indemnitee caused by his own negligence unless such effect is clearly and unequivocally expressed in such agreement. Southern Pacific Co. v. Layman, 173 Or. 275, 279, 145 P.2d 295; Southern Pacific Co. v. Morrison-Knudsen Co., 216 Or. 398, 410, 338 P.2d 665. The language of the indemnity agreement in this case could well be construed to indemnify the defendant against its own negligence. Such an agreement is not void as against public policy. Southern Pacific Co. v. Morrison-Knudsen Co., supra, [216 Or.] at page 418, [338 P.2d at page 675.] Even if defendant had been negligent in failing to inspect, its negligence was passive and could only be brought into play by said affirmative acts of negligence on the part of plaintiff. In such case, and even in the absence of a written indemnity agreement, the defendant could recover on common law tort principles. City of Astoria v. Astoria & Columbia River R. Co., 67 Or. 538, 136 P. 645, 49 L.R.A.,N.S., 404; Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 1950, 183 F.2d 902, 20 A.L.R.2d 695; Southern Pacific Co. v. Morrison-Knudsen Co., supra, [216 Or. at] page 416, [338 P.2d at page 674.] Plaintiff and defendant were not in pari

1. Oregon Revised Statutes.

delicto. Therefore, defendant is entitled to indemnification under this theory. Kennedy v. Colt, 216 Or. 647, 339 P.2d 450. Defendant is entitled to indemnification against the plaintiff under either theory. Weyerhaeuser S.S. Co. v. Nacirema Operating Co., Inc., 355 U.S. 563, 569, 78 S.Ct. 438, 2 L.Ed.2d 491; Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 132, 133, 76 S.Ct. 232, 100 L.Ed. 133. Plaintiff has failed to prove its contentions.

The undisputed evidence is that the defendant paid an independent contractor $7,250.00 for replacement of the bridge. Since defendant tendered the plaintiff the privilege of settling the claim, which offer was rejected by plaintiff, the defendant was placed in the position of making a good faith settlement and was not required to prove the exact amount of the actual damage. The evidence is undisputed that defendant sought bids from different contractors in the area for said replacement and after receiving a number of bids, entered into a contract which required the payment of said sum of $7,250. The evidence shows that defendant entered into this contract in good faith and I so hold. Under such circumstances, defendant is entitled to recover the full amount of such expenditure without showing the precise damage. Chicago, R. I. & P. R. v. Dobry Flour Mills, 10 Cir., 1954, 211 F.2d 785; Thermopolis Northwest Electric Co. v. Ireland, 10 Cir., 1941, 119 F.2d 409; Pacific Telephone & Telegraph Co. v. Pacific Gas & Electric Co., 170 Cal.App.2d 387, 338 P.2d 984. I further find that the reasonable cost of said restoration was said sum.

Defendant's claim for additional indemnity is unsupported by substantial evidence.

Counsel for defendant shall prepare, serve and present findings and judgment in conformity herewith.